Charles E. **FONTAINE** and **I.O.S., Ltd. (S.A.)** d/b/a **Investors Overseas Services**, Plaintiffs,

v.

**SECURITIES AND EXCHANGE COMMISSION**, Manuel F. Cohen, Byron D. Woodside, Francis M. Wheat, Hugh F. Owens, Hamer H. Budge, as Chairman and members respectively, Defendants.

Civ. No. 525–65.

United States District Court
D. Puerto Rico,
San Juan Division.

Oct. 3, 1966.

Fiddler, Gonzalez & Rodriguez, San Juan, P. R., for plaintiffs.

Meyer Eisenberg, Washington, D. C., Candita M. Orlandi, Asst U. S. Atty., San Juan, P. R., for defendants.

## ORDER

CANCIO, District Judge.

Investors Overseas Services ("IOS"), a Panamanian corporation with principal offices in Geneva, Switzerland, and its Puerto Rico branch manager, Charles E. Fontaine ("Fontaine"), have brought an action in this Court seeking to enjoin the Securities and Exchange Commission ("SEC") from conducting an administrative proceeding against IOS and certain of its principals and other associated persons for alleged violations of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a et seq. IOS also seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that it is not required to continue its registration as a broker-dealer with the SEC and could withdraw that registration without prejudice. The SEC moved to dismiss the complaint or, in the alternative, for summary judgment.

The Court has heard oral argument and has carefully and fully considered extensive memoranda and affidavits from both sides, including supplementary memoranda and affidavits regarding specific issues raised in this case.

I

IOS conducts a world-wide securities business. Its principal activity appears to be the sale to public investors of shares of The Fund of Funds ("FOF"), a $360,000,000 unregistered open-end investment company, based in Switzerland and controlled by IOS. FOF's portfolio consists primarily of shares of United States registered open-end investment

companies (mutual funds) and to a lesser extent of shares of mutual fund management companies (which advise, sell and otherwise service and manage registered investment companies). IOS acts for FOF in the purchase and sale of the securities which form FOF's portfolio. These transactions take place in the United States. Whether IOS sells shares of FOF in the United States or to United States citizens and the extent of such activity by IOS, if it does take place, is a matter of dispute between the parties and an issue in the SEC's administrative proceeding.

IOS has been registered with the SEC since 1960 as a broker-dealer in securities, pursuant to the provisions of Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b). Under that Act, all registered broker-dealers are required to maintain and keep current specified books and records reflecting their day-to-day securities business. Section 17(a), 15 U.S.C. § 78q(a). These books and records are required to be made available to the SEC for its inspection so that it may fulfill its regulatory responsibilities to safeguard investors and maintain the integrity of the securities markets. If the registered broker-dealer is a non-resident of the United States, Rule 17a–7, 17 CFR 240.17a–7, specifically provides that the registrant shall keep a complete set of those books and records at a designated place within the United States, unless a specific undertaking is filed with the Commission in which the broker-dealer agrees to furnish such books and records at the SEC's offices in Washington or elsewhere in the United States, upon demand. IOS filed such an undertaking at the time of its registration with the SEC as a broker-dealer in 1960.

On November 29, 1965, the Commission made a formal demand, pursuant to IOS's undertaking and the provisions of Rule 17a–7, for the production of IOS's books and records relating to transactions with or for American customers. For reasons set forth below, IOS refused to produce such books and records, although it had advised the SEC it would provide it with a statistical breakdown of their contents. IOS instituted this action seeking declaratory relief, on December 14, 1965, alleging that the books and records of IOS were kept at its principal offices in Geneva, Switzerland; that certain provisions of Swiss law forbade their production by IOS for inspection by the SEC; and that, in light of Section 30(b) of the Exchange Act,[1] IOS was not required to produce its books and records relating to transactions outside the United States. IOS seeks to have this Court declare: (1) that IOS is not required to continue its registration and may withdraw it without prejudice (i. e., without going through any administrative proceeding which might be initiated by the SEC), (2) that Section 30(b) renders the SEC's demand unlawful, insofar as it relates to IOS's "business in securities without the jurisdiction of the United States", and (3) that its failure to comply with the demand does not constitute a violation of the Securities Exchange Act.[2]

On February 3, 1966 the SEC instituted an administrative proceeding against IOS, certain of its principals, and associated persons to determine whether they had violated the federal securities laws as set out in the Order

1. 15 U.S.C. § 78dd(b), which provides:
   (b) The provisions of this title or of any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States, unless he transacts such business in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to prevent the evasion of this chapter.

2. Plaintiff also sought similar declaratory relief with respect to a subpoena duces tecum which a SEC staff member had served upon Fontaine. That part of the complaint dealing with the subpoena is dismissed for the reasons stated in this Court's order of January 31, 1966 dismissing plaintiffs' Motion to Quash the Subpoena.

for Proceeding before the Commission.[3] IOS's failure to comply with the demand for production of its books and records is one of the alleged violations charged in that proceeding as a basis for revocation of IOS's registration as a broker-dealer.

On February 14, 1966, IOS amended its complaint herein and moved for a preliminary injunction against the SEC which would enjoin it from prosecuting its administrative proceeding until final disposition of the action before this Court. The SEC, in turn, moved to dismiss the complaint or, in the alternative, for summary judgment.

## II

IOS's motion for preliminary injunction challenges the SEC's jurisdiction under the Exchange Act to require the production of IOS's books and records relating to its business as a broker-dealer which are kept in Switzerland and the validity of the SEC's demand for production pursuant to such requirement. IOS argues that these questions are now before this Court and they should be determined here before the SEC's administrative proceeding is permitted to continue.

The Securities and Exchange Commission, in its regulation of the securities industry, has the duty to inform itself and the Congress of matters relating to its jurisdiction. The Commission has a right to inquire into IOS's conduct to determine what acts or practices might be within its jurisdiction. In Endicott Johnson v. Perkins, (1943) 317 U.S. 501, 508; 63 S.Ct. 339, 343; 87 L.Ed. 424, 429, the Supreme Court held that an agency has the right to determine the question of its own jurisdiction, and could investigate areas of possible jurisdiction in order to decide that question. See also, Interstate Commerce Commission v. Goodrich Transit Co., (1912) 224 U.S. 194, 211–214; 32 S.Ct. 436, 439–441, 56 L.Ed. 729, 736–737; United States v. Morton Salt Co., (1950) 338 U.S. 632, 642–643, 652, 70 S.Ct. 357, 363–364, 368–369, 94 L.Ed. 401, 410–411, 416. It therefore follows that,

**3.** In the Order for Proceeding the SEC's staff alleges:

1. That IOS and the other respondents had violated Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. 77e(a) and 77e(c), and Section 7 of the Investment Company Act, 15 U.S.C. 80a–7, by the use of the means and instruments of interstate commerce to offer to sell, sell and deliver after sale, shares in an IOS Investment Program pursuant to which FOF interests are sold, when no registration statement was in effect under the Securities Act and when neither FOF nor the IOS investment Program had registered pursuant to Section 8 of the Investment Company Act, 15 U.S.C. 80a–8. The Order also sets forth numerous deficiencies in IOS offering materials which would not have been permitted had the securities been registered;

2. That IOS and other respondents violated Section 17(d) of the Investment Company Act, 15 U.S.C. 80a–17(d), and Rule 17d–1 thereunder, 17 CFR 240.17d–1, in connection with an offering of securities of a corporation, Ramer Industries Inc., by effecting joint transactions therein between persons affiliated with a registered investment company in contravention of rules prescribed by the Commission;

3. That Investors Continental Services, Ltd., willfully violated Section 17(a) of the Securities Exchange Act, 15 U.S.C. 78q(a), and IOS, among others, willfully aided and abetted such violation by failing to keep and preserve a certain communication required to be preserved under Rule 17a–4 pursuant to that Act, 17 CFR 240.17a–4, and that IOS willfully violated Section 17(a) of that Act, aided and abetted by others of the respondents, by failing to furnish to the Commission upon demand certain books and records required to be kept by IOS relating to transactions effected by IOS for customers who are citizens of the United States; and

4. That IOS's activities with respect to the direction of brokerage and the "give-up" of brokerage commissions to brokers and dealers designated by IOS (which resulted in statements in prospectuses and proxy material of registered investment companies not in accordance with the facts) and with respect to reciprocal business from which IOS derived substantial benefits, are relevant to the public interest.

where a registered broker-dealer is involved, the SEC must be free to inspect all of the books and records which are required to be kept under the Exchange Act.

■ The Court cannot permit IOS unilaterally to limit the scope of the SEC's inquiry to determine whether violations have occurred, by denying the SEC access to the very books and records most pertinent to that inquiry. The SEC cannot be asked to rely on statistical summaries of books and records which are supplied by the broker-dealer, without the opportunity for verification by review of the original records themselves. Moreover, the specific question which is raised in the administrative proceeding with respect to IOS, i. e., whether its registration as a broker-dealer should be revoked, is clearly within the jurisdiction and responsibility of the Commission. IOS seeks an order of this Court declaring that it may withdraw its registration without prejudice, but it has never requested withdrawal from the SEC. Section 15(b) (5) of the Exchange Act specifically provides that the SEC shall revoke an effective registration or take other disciplinary action against a registrant if it finds that such action is in the public interest and that the broker-dealer or any partner, officer, director or controlled or controlling person thereof has, *inter alia*, willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934 or the Investment Company Act of 1940, or any rule thereunder. Section 15(b) (6) provides that with-

drawal of a registration by a registrant shall be *subject to such terms and conditions as may be imposed by the Commission in the public interest or for the protection of investors.*[4]

■■ That IOS's request for withdrawal should be made to the Commission and not to this Court is made clear by the relevant cases and the specific provisions of the Exchange Act and the Rules thereunder. The SEC may conduct proceedings and make its findings on what conditions may be necessary to protect the public interest before permitting withdrawal. Peoples Securities Co. v. Securities and Exchange Commission, (5 Cir., 1961) 289 F.2d 268; Blaise D'Antoni and Assoc. v. Securities and Exchange Commission, (5 Cir., 1961) 290 F.2d 688; cf. Columbia General Investment Corp. v. Securities and Exchange Commission, (5 Cir., 1959) 265 F.2d 559.

In Guaranty Underwriters, Inc. v. Johnson, (5 Cir., 1943) 133 F.2d 54, the Court affirmed a dismissal of an action seeking to restrain a revocation proceeding under Section 15(b) of the Exchange Act where a registered dealer had ceased doing business, applied for withdrawal and consented to revocation. The District Court there affirmed had observed:

" * * * [T]here is quite a distinction in the position of one who could say, 'I resigned,' and one who says, 'I was expelled.' It is conceivable that instances could arise where expulsion with the onus that goes

---

4. Pursuant to Section 15(b) (6) the Commission has adopted Rule 15b6–1, 17 CFR 240.15b–6, which provides:
 "If a notice to withdraw from registration is filed by a broker or dealer pursuant to section 15(b), it shall become effective on the 30th day after the filing thereof with the Commission, unless prior to its effective date the Commission institutes a proceeding pursuant to section 15(b) to revoke or suspend the registration of such broker or dealer or to impose terms and conditions upon such withdrawal. If the Commission institutes such a proceeding, or if a notice to withdraw from registration is filed with the Commission at any time subsequent to the date of the issuance of a Commission order instituting proceedings pursuant to section 15(b) to revoke or suspend the registration of the broker or dealer filing such notice, and during the pendency of such a proceeding, the notice to withdraw shall not become effective except at such time and upon such terms and conditions as the Commission deems necessary or appropriate in the public interest or for the protection of investors."

with it, might be more appropriate than voluntary withdrawal." [5]

In quoting the preceding language, this Court does not pass judgment in any manner upon the conduct of IOS or that of any of its agents. This is a matter which the law leaves to the SEC in first instance. It is possible that IOS and its agents may vindicate their position at the SEC hearing and establish the propriety of their acts. But the determination whether they have done so can only be made by the SEC after a hearing which is expressly provided for in the Exchange Act. Similarly, if IOS wished to withdraw, it should have followed the clearly adequate administrative procedures available under the Exchange Act.

Congress has expressly provided that the disqualification arising from the acts of misconduct specified in Section 15 (b) (5) runs not only against various types of broker-dealer organizations, which as the SEC points out may be created and dissolved with facility, but also to individuals who are affiliated with such entities.

If the Court would accept IOS's plea for a declaratory judgment, that IOS could withdraw its registration without prejudice or if the Court would enjoin the SEC's administrative proceeding, a pattern could be established which might permit wholesale evasion of the scheme of the Exchange Act. The determination of whether IOS's action would permit it to withdraw its registration without prejudice or whether IOS should be revoked and individuals associated with IOS found causes of such revocation is within the jurisdiction of the Commission and specific procedures are set out in the statute for such a determination to be made in an administrative proceeding.

██ It is well settled that administrative remedies must be exhausted before judicial relief is available. Boire v. Greyhound Corp., (1964) 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849; Franklin v. Jonco Aircraft Corp., (1953) 346 U.S. 868, 74 S.Ct. 126, 98 L.Ed. 378; Securities and Exchange Commission v. Otis & Co., (1949) 338 U.S. 843, 70 S.Ct. 89, 94 L.Ed. 516; Aircraft & Diesel Equipment Corp. v. Hirsch, (1947) 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796; Macauley v. Waterman S. S. Corp., (1946) 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; Myers v. Bethlehem Shipbuilding Corp., (1938) 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–465, 82 L.Ed. 638, 643–645. The courts have specifically applied the exhaustion doctrine to administrative proceedings under the federal securities laws and have refused to enjoin SEC administrative proceedings, including revocation preceedings, where administrative remedies have not been exhausted. Securities and Exchange Commission v. Otis & Co., supra; R. A. Holman & Co. v. Securities and Exchange Commission, (1963) 116 U.S. App.D.C. 279, 323 F.2d 284, certiorari denied, (1963) 375 U.S. 943, 84 S.Ct. 350, 11 L.Ed.2d 274; The Wolf Corp. v. Securities and Exchange Commission, (1963) 115 U.S.App.D.C. 75, 317 F.2d 139, 142–143; Peoples Securities Co. v. Gadsby (C.A.D.C. No. 14,381, March 25, 1958); Schwebel v. Orrick, (1958) 102 U.S.App.D.C. 210, 251 F.2d 919.

██ It has been repeatedly held that the federal securities laws should be interpreted to effectuate the Congressional purpose to protect investors and the integrity of the American securities markets. Securities and Exchange Commission v. Capital Gains Research Bureau, (1963) 375 U.S. 180, 195, 84 S.Ct. 275, 284–285, 11 L.Ed.2d 237, 248; Securities and Exchange Commission v. C. M. Joiner Leasing Corp., (1943) 320 U.S. 344, 350–51, 64 S.Ct. 120, 123–124, 88 L.Ed. 88, 92–93; Prudential Insurance Co. of America v. Securities and Exchange Commission, (3 Cir., 1964) 326 F.2d 383, 386, certiorari denied, (1964) 377 U.S. 953, 84 S.Ct. 1629, 12 L.Ed.2d 497. The questions which have been raised here, i. e., wheth-

5. (S.D.Fla., 1942) 2 S.E.C.Jud.Dec. 719, 721.

er IOS's "foreign business" may be insulated from the effect of the regulatory provisions of the Securities Exchange Act by its interpretation of Section 30 (b) or the alleged effect of Swiss law, whether IOS in fact conducts business in the United States, the extent of IOS's use of the means and instrumentalities of interstate commerce, the impact of its operations on United States securities markets and investors and the other questions regarding IOS's business operations, should be initially determined by the SEC in the pending administrative proceeding. If the SEC's decision is adverse to IOS, IOS will have ample opportunity to present its arguments to a court of appeals on review, if it so desires, and, if appropriate, a stay of any SEC order resulting from the proceeding may be granted either by the SEC itself or by the reviewing court. These questions will not be ripe for judicial decision until the SEC has had the opportunity contemplated by the Exchange Act to pass upon them. Consequently, it is inappropriate for this Court to interfere with the SEC's administrative proceeding.

### III

■ Even if the doctrine of exhaustion of administrative remedies discussed above were not applicable here, as it is, the doctrine of primary jurisdiction would require that the SEC proceeding continue without restraint from this Court. Texas & P. R. Co. v. Abilene Cotton Oil Co., (1907) 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; United States Navigation Co. v. Cunard S. S. Co., (1932) 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408; United States v. Western Pac. R. Co., (1956) 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126. In the last cited case, the Supreme Court set out the standards for application of this doctrine. Id. at 352 U.S. 63–64, 77 S.Ct. 165, 1 L.Ed.2d 132:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. *'Primary jurisdiction,'* on the other hand, applies where a claim is originally cognizable in the courts, and *comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."* (Emphasis supplied.)

The continuation or revocation of a broker-dealer registration has clearly been placed by Congress within the special competence of the SEC.

### IV

■ IOS argues, in effect, that there should be an exception from both the exhaustion and primary jurisdiction doctrines because of its contention that the SEC's action in bringing the administrative proceeding exceeds its jurisdiction under Section 30(b) of the Securities Exchange Act, and that, if IOS complied with its undertaking, it might violate Swiss law. These contentions of IOS, however, may be asserted as defenses in the pending administrative proceeding and, if these proceedings should result in a sanction against IOS, it may press its contentions in a court proceeding specifically provided by the Exchange Act for review of the action of the Commission.[6] IOS's arguments in this respect provide no basis for an exception to the exhaustion and primary jurisdiction doctrines.

■ In any event, IOS's reliance on certain provisions of Swiss law as precluding it from complying with the

---

6. See Section 25(a) of the Securities Exchange Act, 15 U.S.C. § 78y(a).

SEC's demand for books and records under Section 17(a) and Rule 17a–7 of the Exchange Act, appears to be misplaced. IOS relies on Article 273 of the Swiss Penal Code [7] and Article 47(b) of the Swiss Banking Act [8] which are part of the pattern of so-called "Swiss secrecy laws," designed to "protect Swiss businesses from disclosure of their operations and records to foreign governments and individuals."

IOS's expert, Dr. Turrettini, is of the view that both Article 273 of the Swiss Penal Law and Article 47(b) of the Swiss Banking Act prohibit IOS from producing its books and records for inspection by the SEC. Dr. Schoch, the SEC's expert, concludes in her affidavit that: 1) it is likely that Article 273 would not be applied to IOS under the circumstances of this case, 2) on the record before this Court and in the absence of a showing that IOS is certified in Switzerland as a "bank or bank like finance institution soliciting funds from the public," IOS cannot be subject to Article 47(b) and 3) therefore, it is likely that IOS could produce its records

---

**7.** The following is the official French text of Article 273 found in Titre Treizième of Le Code Pénal Suisse, 3 Recueil Systématique des Lois et Ordonnances 1848–1947 263:

"*Service de renseignements économiques.*

Celui qui aura cherché à découvrir un secret de fabrication ou d'affaires pour le rendre accessible à un organisme officiel ou privé étranger, ou à une entreprise privée étrangère, ou à leurs agents,

celui qui aura rendu accessible un secret de fabrication ou d'affaires à un organisme officiel ou privé étranger, ou a une entreprise privée étrangère, ou à leurs agents,

sera puni de l'emprisonnement ou, dans les cas graves, de la réclusion. Le juge pourra en outre prononcer l'amende."

No official translation of the Article into the English language is available. IOS has translated Article 273, as a part of the Opinion of its expert Robert Turrettinni, as follows:

"*Industrial Espionage*

Anyone seeking to discover an industrial or commercial secret for the purpose of making it known to a foreign official or private body, or to a foreign private enterprise, or to their agents.

Anyone who makes known an industrial or commercial secret to a foreign official or private body, or to a foreign private enterprise or to their agents.

will be punished with imprisonment or, in serious cases, committed to a penitentiary. Furthermore, the Judge may award a fine."

The translation submitted by Dr. Schoch, the SEC's expert, differs in no material respect from the above.

**8.** The following is the official French text of Art. 47(B) found in Chapitre XIV of the Loi Fédérale sur les banques et les caisses d'épargne, 10 Recueil Systématique des Lois et Ordonnances 1848–1947 342:

Celui qui intentionnellement,

\* \* \* \* \* \* \*

"(b) en sa qualité de membre d'un organe ou d'employé de la banque, de reviseur ou d'aide-reviseur, de membre de la commission des banques, de fonctionnaire ou d'employé du secretariat, viole la discrétion a laquelle il est tenu en vertu de la loi ou le secret professionnel, ou qui incite à commettre cette infraction ou tente d'y inciter,

est passible d'une amende de 20 000 francs au plus ou d'un emprisonnement de six mois au plus. Les deux peines peuvent être cumulées.

Si l'auteur a agi par négligence, la peine est l'amende de 10 000 francs au plus."

No official translation of this Article into the English language is available. IOS has translated Article 47(b), as a part of the opinion of its expert Robert Turrettinni, as follows:

"Anyone who intentionally,

\* \* \* \* \* \* \*

in his capacity as an executive or employee of a bank, auditor, or assistant auditor, or as a member of the banking commission, or as an official or employee of its secretariat violates the discretion which he is bound to observe by virtue of the law on professional secrets, or who induces or attempts to induce anyone to commit this infraction,

shall be punishable by a maximum fine of 20,000 Swiss francs or a maximum of six months imprisonment, or both.

If the person concerned has acted through negligence, the penalty shall be a maximum fine of 10,000 Swiss francs."

The translation submitted by Dr. Schoch, the SEC's expert differs in no material respect from the above.

and books relating to transactions with and for American citizens, as the Commission has demanded, for its inspection. The Court accepts the analysis of Swiss law which was made by Dr. Schoch as correct and sets forth her detailed conclusions in the margin.[9]

9. Specifically, Dr. Schoch concludes:

"1. It is likely that Article 273 of the Swiss Penal Code would not be applied so as to preclude IOS from producing its books and records relating to transactions with, or for, United States citizens, for inspection by the Commission in accordance with IOS's express undertaking to do so, which was filed by IOS as a condition of its registration.

"2. It is likely that Swiss law would not be violated if IOS under these circumstances produced its books and records relating to securities transactions with or for United States citizens pursuant to an order of a United States Court enforcing a demand for such books and records under the provisions of the Securities Exchange Act.

"3. Whether IOS is subject to Section 47(b) of the Swiss Banking Act it is a question of fact depending purely upon whether IOS has been certified as a bank or bank-like institution by the Swiss Federal Banking Commission. No such showing has been made.

"4. There is no rule of Swiss law which would prevent IOS from closing its branch office in Geneva and removing its operations, together with its books and records, to some other country whose laws would raise no doubts as to the permissibility of the production of its books and records under these circumstances."

10. Dr. Turrettini concluded:

Sur la base de cet article, je conclus qu'il n'est pas possible à I.O.S., Ltd (S.A.), succursale de Genève, de rendre accessible à un organisme étranger, même officiel, des renseignements sur ses propres affaires, sous peine de réclusion, d'emprisonnement et d'amende à ses organes.

A relever que la poursuite a lieu d'office, sans qu'il y ait besoin du dépôt d'une plainte.

\* \* \* \* \* \* \*

Il apparaît bien qu'I.O.S., Ltd., (S.A.), succursale de Genève, présente les caractéristiques d'une société financière à

Alternatively, even accepting the construction of Swiss law most favorable to plaintiffs as set forth by plaintiff's expert, Dr. Turrettini,[10] IOS is nevertheless under an obligation to comply with the United States law to which it has submitted.

caractère bancaire, en raison de l'activite qu'elle déploie ouvertement.

Dès lors, I.O.S., Ltd., (S.A.), se doit d'appliquer rigoureusement les règles impératives prévues expressément par cette loi.

\* \* \* \* \* \* \*

Vous ne pouvez en conséquence, sans violer le droit suisse, soumettre vos dossiers sans restriction à la SECURITIES AND EXCHANGE COMMISSION, à moins que vous n'ayez pu faire lever, par vos clients, votre obligation de garder le secret.

\* \* \* \* \* \* \*

En conclusion de ce qui précède, je puis répondre brièvement de la façon suivante aux deux premieres questions qui vous ont été posées par le Juge du district de Puerto Rico:

1. Il y a un conflit évident et grave entre le droit pénal suisse et les demandes qui vous sont faites par la SECURITIES AND EXCHANGE COMMISSION.

2. Une décision d'un tribunal des Etats-Unis contraire au droit pénal suisse ne pourrait être exécutée par votre société sans l'exposer, ainsi que ses dirigeants, à des poursuites civiles et pénales de la part des autorités judiciaires suisses.

The English translation of the above portions of Dr. Turrettini's opinion submitted by IOS, is as follows:

"On the basis of this Article [Article 273], I conclude that it is not possible for I.O.S., Ltd. (S.A.), Geneva Branch, to allow access to a foreign organization, even an official one, to particulars of its own business, under penalty of its officers being subject to imprisonment and a fine.

"It should be noted that prosecution would be automatic, and that it would not be necessary for a complaint to be made.

\* \* \* \* \* \* \*

"It appears indeed that I.O.S., Ltd. (S.A.), Geneva Branch, is constituted as a financial company having the characteristics of a bank by virtue of the activity in which it overtly engages.

"Therefore, I.O.S., Ltd. (S.A.) must strictly observe the imperative regulations expressed by this law [Article 47(b)].

\* \* \* \* \* \* \*

"Consequently, you [IOS] may not, without violating Swiss law, submit your

Societé Internationale Pour Participations Industrielles Et Commerciales SA v. Rogers, (1958) 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255, relied upon by plaintiffs, is distinguishable. That action arose out of an attempt to regain property which had been confiscated by the United States under the Trading with the Enemy Act. The Supreme Court held that a dismissal of the complaint before trial because plaintiff could not obtain certain records without violating Swiss law raised a serious question as to the deprivation of property without due process of law in violation of the Fifth Amendment. The plaintiff, the Court held, should have a right to attempt to prove its ownership of the property, even though it was unable to produce the documents demanded by the defendants, and it would not be appropriate for the Court to draw inferences unfavorable to the plaintiff by reason of the absence of complete disclosure on its part, compelled by Swiss law.

Unlike that case, plaintiffs' right to argue that production of the records will violate Swiss law is not being foreclosed here and the plaintiffs are not being deprived of any property. They are being required only to respond to charges in an administrative proceeding, where they will have full opportunity to urge that the policies of the Exchange Act do not require the Commission to take steps which would require IOS to violate Swiss law. In this case there is solely a question of deciding in favor of one of two conflicting policies, that of Switzerland, non-disclosure, and that of the United States, disclosure. But this is a question to be first determined by the body Congress set up to make findings as to the public interest in this area—the Securities and Exchange Commission.

The mere fact that a registered broker-dealer engages in foreign activities does not create a bar to the exercise of United States jurisdiction; foreign business operations which have an effect in the United States may, under appropriate circumstances, be subject to applicable United States law. E. g., Timken Roller Bearing Co. v. United States, (1951) 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199; Steele v. Bulova Watch Co., (1952) 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319; United States v. Aluminum Co. of America, (2 Cir., 1945), 148 F.2d 416. Under these circumstances, it is the responsibility of the Commission, and not of the Courts, to determine the extent, if any, to which the public interest will permit accommodation between the disclosure requirements under the Exchange Act and the secrecy rquirements of the foreign law. In Societé Internationale Pour Participations Industrielles Et Commerciales SA v. Rogers, 357 U.S. at 205–206, 78 S.Ct. at 1092, the Court stated:

"We do not say that this ruling would apply to every situation where a party is restricted by law from producing documents over which it is otherwise shown to have control. Rule 34 is sufficiently flexible to be adapted to the exigencies of particular litigation. The propriety of the use to which it is put depends upon the circumstances of a given case, and we hold only that accommodation of the Rule in this instance to the policies underlying the Trading with the Enemy Act justified the action of the District

files without restriction to the Securities and Exchange Commission, unless relieved of such obligation to secrecy by your clients.

* * * * * * *

"To conclude the foregoing, I shall reply briefly as follows to the first two questions put to you by the Judge of the District Court of Puerto Rico:

"1. There is an obvious and serious conflict between the Swiss Penal Code and demands made upon you by the Securities and Exchange Commission.

"2. A decision of a United States court which is contrary to the Swiss Penal Code may not be complied with by your company without exposing it, as well as its executives, to civil and criminal prosecution by the Swiss judicial authorities."

Court in issuing this production order."

Should it ultimately be found that it is necessary in the public interest that the disclosures required under the Securities Exchange Act of all registered broker-dealers be required of IOS even if such disclosure could be had only through violation of Swiss law (although IOS, a Panamanian corporation, could presumably produce its books and records by moving its business from Switzerland), then IOS must decide whether or not it wishes to continue to do business in the United States.[11] If IOS wishes to do so through the use of the mails and facilities of interstate commerce, it must be willing to comply fully with United States law. If not, it is up to IOS to determine where it wants to do business. As Judge Learned Hand has stated:[12]

"[I]t is strange indeed to have it argued that a common carrier, may refuse to tell what are its secret agreements with others engaged in the enterprise, when the inquiry was to learn among other things what those secret arrangements were, and how far they might trench upon that freedom of commerce that it was one of the purposes of the Act to secure. If such an inquiry annoys other governments, as apparently it does, their complaint must be addressed to the Executive; it is not a matter with which courts have any power to deal." 284 F.2d at 64.

In view of the foregoing, it is unnecessary to consider the SEC's contention that the suit is barred by the doctrine of sovereign immunity.

The fact that the Court dismisses plaintiffs' motion for a preliminary injunction and its complaint for a declaratory judgment and a permanent injunction is not to be interpreted as precluding the SEC from taking whatever steps may be necessary to assist IOS to comply with its demand with as little burden as possible. The Court is confident that the Commission will cooperate with IOS in working out plans to have the necessary documents brought in and disclosed in such a manner as to obtain fullest compliance with the Commission's demand. On the other hand, the Court is equally confident that IOS will cooperate in the SEC's lawful endeavor; without the necessity of intervention of this or any other Court.

For the reasons stated above, it is:

Hereby ordered, adjudged and decreed that plaintiff's motion for a preliminary injunction be, and hereby is, denied and dismissed; and the defendants motion for summary judgment is granted.

---

11. See First National City Bank v. Internal Revenue Service, (2 Cir. 1959) 271 F.2d 616, 620, certiorari denied, (1960) 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381.

12. Kerr Steamship Co. v. United States, (2 Cir., 1960) 284 F.2d 61 judgment vacated with direction to dismiss as moot, 369 U.S. 422, 82 S.Ct. 874, 7 L.Ed.2d 847.