GERLING INTERNATIONAL INSURANCE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26765-83.    Filed September 24, 1986.

*Lawrence Gerzog*, for the petitioner.
*David Brodsky*, for the respondent.

OPINION

TANNENWALD, *Judge*: This case is again before us on cross motions for summary judgment. The parties agree

(and we concur) that, in the present posture of the case, there are no genuine issues of material fact involved; consequently, we may dispose of the case by decision as a matter of law. Rule 121, Tax Court Rules of Practice and Procedure.

The factual background, which provides the foundation for the motions herein, is largely set forth in our prior opinion, 86 T.C. 468 (1986), and will not be repeated herein. Rather, we will set forth what has occurred since the memorandum sur order, which subsequently became the aforementioned published opinion, was issued on March 12, 1986.

Simultaneously with the issuance of the memorandum sur order, an order was entered. A copy of that order is set forth as Exhibit A to this opinion. Thereafter, the parties attempted to arrive at a mutually acceptable procedure pursuant to which respondent would be afforded the opportunity to examine the books and records of Universale Reinsurance Co., Ltd. (Universale). Their attempt failed for the reasons hereinafter set forth. As a consequence, the Court issued a further order, dated April 9, 1986, copy of which is set forth as Exhibit B to this opinion.

Upon the basis of the two above-mentioned orders of the Court and other material of record herein, respondent moved for summary judgment contending that, because of the preclusion of evidence provision of the Court's April 9, 1986, order, petitioner would, as a matter of law, be unable to meet its burden of proof and that consequently a decision should be entered for respondent.[1]

Petitioner countered respondent's motion for summary judgment with a cross motion for summary judgment. In support of its cross motion, petitioner argues that: (1) Respondent has ignored the economic reality of its relationship with Universale; (2) while the Court (incorrectly according to petitioner) rejected that argument in its prior opinion, the argument nevertheless supports the contention that respondent has acted arbitrarily and unreasonably in issuing the deficiency notice herein, particularly in light of

---

[1] Such preclusion would prevent petitioner from satisfying its burden of proof, not only as to the amount of the allowable deductions for losses and expenses, but also the adjustments by respondent as to the proper year for reporting of petitioner's share of the premiums, losses, and expenses, of Universale.

respondent's prior acceptance of petitioner's method of reporting, for U.S. tax purposes, only the net income or loss revealed by the annual statements furnished it by Universale; (3) petitioner has made every effort to permit respondent to audit the books and records of Universale and the condition, insisted upon by respondent, that the audit first be approved by the Swiss Federal Government (see p. 682 *infra*), is unreasonable and was properly rejected by Universale and consequently by petitioner.

Petitioner's first two arguments have essentially been disposed of by our prior opinion. See 86 T.C. at 473-474. Petitioner's "economic reality" argument ignores the nature of the relationship between petitioner and Universale, namely agent (Universale) and principal (petitioner). See *Colonial Surety Co. v. United States*, 147 Ct. Cl. 643, 178 F. Supp. 600, 602 (1959). If, in fact, Universale has ascribed to petitioner more than its proper share of losses and expenses, petitioner has not received the share of the net income due it. It is well established that income received by an agent is taxable to a principal at the time of receipt by the agent, rather than at the time of payment by the agent to the principal. *Maryland Casualty Co. v. United States*, 251 U.S. 342, 347 (1920); *Alsop v. Commissioner*, 290 F.2d 726, 728 (2d Cir. 1961), affg. 34 T.C. 606 (1960). See also *McGahen v. Commissioner*, 76 T.C. 468, 478 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983).

Petitioner seeks to avoid the principal-agent characterization by contending that its arrangement with Universale was one of indemnity, as distinguished from assumption, reinsurance. See secs. 1.809-4(a)(1)(iii) and 1.809-5(a)(7)(ii), Income Tax Regs. Aside from the fact that we have serious doubts as to the validity of petitioner's position in light of the terms of the treaty between petitioner and Universale, and particularly article 4 thereof (see 86 T.C. at 469-470), we think any such distinction is irrelevant under the facts and circumstances herein. Cf. *International Life Insurance Co. v. Commissioner*, 51 T.C. 765, 772 (1969), affd. per curiam 427 F.2d 137 (6th Cir. 1970). To permit any such distinction, in the context of the instant case, would preclude respondent from questioning the underpinnings of any indemnity arrangement in order to determine the proper tax conse-

quences flowing therefrom and to obtain the information necessary to make such questioning effective.

We are unable to perceive why, having refused to accept petitioner's "economic reality" argument as a matter of substantive law, we should nevertheless apply that argument in order to hold that respondent's determinations in the notice of deficiency were arbitrary. Nor are we persuaded that we should do so because respondent did not question petitioner's method of reporting its transactions with Universale over a period of 18 years and, in fact, accepted such method after examining petitioner's returns for the taxable years 1959, 1960, and 1961. It is well established that a taxpayer is not entitled to continue the treatment of an item of income or deduction simply because respondent either has not objected in the past or has approved like treatment of the item in an earlier year. *Coors v. Commissioner*, 60 T.C. 368, 406 (1973), affd. 519 F.2d 1280 (10th Cir. 1975); *Union Equity Cooperative Exchange v. Commissioner*, 58 T.C. 397, 408 (1972), affd. 481 F.2d 812 (10th Cir. 1973).

We now turn to the third prong of petitioner's argument. See pp. 680-681, *supra*. Both prior and subsequent to the Court's order of March 12, 1986 (Exhibit A), discussions took place between petitioner (who consulted Universale) and respondent. As a result of those discussions, Universale, through petitioner, offered to have an American C.P.A. firm, with an office in Switzerland, selected and paid by respondent, audit the relevant books and records of Universale at Universale's office in Zurich, Switzerland, and transmit the results of that audit to respondent. Respondent, however, was concerned about the effect of article 271 of the Swiss Penal Code,[2] and insisted that the Swiss Federal Government be informed of, and approve, the audit. Universale refused to accede to that condition because it did not want "to engender Swiss governmental intrusion into a matter in which neither Universale nor the Swiss government are parties" and asked that the auditors "do the audit

---

[2]Art. 271 of the Swiss Penal Code provides in translation as follows:

"Anyone who, without authorization, takes in Switzerland for a foreign state any action which is within the powers of the public authorities,

"Anyone who takes such actions for a foreign party or for any other foreign organization,

"Anyone, who facilitates such actions,

"Shall be punished with imprisonment, in serious cases with penitentiary confinement."

on an invitation-type basis." See Petitioner's Memorandum in Support of its Cross-Motion for Summary Judgment, pp. 9-10. As a consequence of that refusal, respondent returned to his original position that Universale's books and records be produced in the United States for examination by respondent's agents, a situation described by petitioner as an "impractical and inequitable demand." *Supra* at p. 10.

Petitioner vigorously asserts that respondent's insistence on approval of the audit in Switzerland by the Swiss Federal Government is unreasonable. We disagree.

In the first place, article 271 of the Swiss Penal Law clearly prohibits an examination in Switzerland by respondent's agents. See note 2 *supra*; *United States v. Vetco, Inc.*, 691 F.2d 1281, 1290 (9th Cir. 1981). Clearly, we should not countenance action by *agents of the United States Government* which would cause a violation of the laws of a nation with whom we have friendly relations. See *Application of Chase Manhattan Bank*, 297 F.2d 611, 613 (2d Cir. 1962).[3] Nothing in article 271 suggests that an "invitation-type" audit, i.e., an audit with Universale's consent, would remove respondent's agents from the sanctions of article 271. In the second place, even if the use of an "invitation-type" audit might arguably avoid the need for the approval of the Swiss Federal Government, we do not think it is within our province to second-guess respondent on this issue. It is common knowledge that the efforts of the United States to obtain the cooperation of the Swiss Federal Government in facilitating the enforcement of our tax laws have involved delicate and sometimes difficult negotiations. "[T]he courts must take care not to impinge upon the prerogatives and responsibilities of the political branches of the government in the extremely sensitive and delicate area of foreign affairs." See *United States v. First National City Bank*, 396 F.2d 897, 901 (2d Cir. 1968). See also *United States v. Davis*, 767 F.2d 1025, 1035 (2d Cir. 1985). The fact that the alternative of producing the books and records of Universale in the United States may be

---

[3]Petitioner's suggestion that somehow the American C.P.A. firm conducting the audit would not be an agent of respondent for the purposes of art. 271 of the Swiss Penal Law is disingenuous to say the least. Cf. *Application of Chase Manhattan Bank*, 297 F.2d 611, 613 (2d Cir. 1962).

expensive or cumbersome and therefore impose some hardship on petitioner and Universale does not make respondent's position unreasonable. See *United States v. Vetco, Inc.*, *supra* at 1289, 1291. We hold that respondent's condition that the approval of the audit by the Swiss Federal Government should be obtained is not unreasonable.

At one point in these proceedings, petitioner suggested that disclosure of its books and records by Universale to respondent's agents might violate article 273 of the Swiss Penal Law dealing with disclosure by any person of a "business secret * * * to a foreign authority."[4] Petitioner has not, however, pursued this line of argument and, in any event, we are of the view that article 273 should not relieve petitioner of its obligation to cause the books and records to be produced. *United States v. Vetco, Inc.*, *supra* at 1289-1291; *Fontaine v. Securities and Exchange Commission*, 259 F. Supp. 880, 887-889 (D. Puerto Rico 1966); cf. *United States v. First National City Bank*, *supra*. See also *United States v. Vetco, Inc.*, *supra* at 1288 n. 8. Similarly, petitioner's passing reference to the possible use of letters rogatory by respondent (a line of argument also not pursued) is without merit. See United States v. Vetco, Inc., *supra* at 1290.

In sum, we see no reason to modify our prior orders of March 12, 1986, and April 9, 1986 (Exhibits A and B). Accordingly, petitioner's cross-motion for summary judgment is denied.[5]

---

[4]Art. 273 of the Swiss Penal Code in translation provides as follows:

"Whoever explores a manufacturing or business secret in order to make it accessible to a foreign authority or a foreign organization or a foreign private business enterprise or their agents,

"Whoever makes a manufacturing or business secret accessible to a foreign authority or a foreign organization or a foreign private business enterprise or their agents,

"Shall be punished with imprisonment, in serious cases with penitentiary confinement. This deprivation of liberty can be combined with a fine."

See also *United States v. Vetco, Inc.*, 691 F.2d 1281, 1287 (9th Cir. 1981); *Fontaine v. Securities and Exchange Commission*, 259 F. Supp. 880, 888 n. 7 (D. Puerto Rico 1966).

[5]We note in passing that, even if we were to accept petitioner's argument, we would not equate arbitrariness on the part of respondent with making his notice of deficiency invalid. At most, we would have shifted the burden of going forward with the evidence to respondent. Respondent's disallowance of the deductions for losses and expenses does not fall within the exception to the rule which has been fashioned by the Second Circuit Court of Appeals (to which an appeal in this case will lie) and which expands the character of the relief available where the circumstances, i.e., absence of linkage of the taxpayer with an income-producing activity, dictate that a notice of deficiency should be held to be arbitrary. See *Llorente v.*

We now turn to respondent's motion for summary judgment. There appears to be no possibility, given the preclusion of evidence provision of our order of April 9, 1986, that petitioner can carry its burden of proof. We are therefore satisfied that respondent's motion should be granted. We observe that, although this action appears to amount to the sanction of dismissal of the proceeding—a sanction which the Supreme Court admonished should be applied with extreme care in *Societe Internationale, Etc. v. Rogers*, 357 U.S. 197 (1958)—the fact of the matter is that we take this action only after having given petitioner (and Universale) an opportunity to produce material which we considered essential to enable respondent adequately to defend against the evidence which petitioner proposed to present in order to sustain its position that respondent's notice of deficiency was erroneous. Cf. *Fontaine v. Securities and Exchange Commission, supra* at 885. Our reasoning with respect to the appropriateness of using the authority of the Court to make this material available to respondent and the considerations which lead us to believe that we have stayed within the parameters outlined by the Supreme Court are set forth in our prior opinion, and we see no purpose to be served by repeating them here. See also *United States v. Vetco, Inc., supra* at 1287-1288. Given the deemed relationship between petitioner, Universale, and Robert Gerling described in that opinion, we are satisfied that we have appropriately balanced the interests of the parties, Universale and the Swiss Federal Government herein (see *United States v. Vetco, Inc., supra* at 1288-1291; *United States v. Chase Manhattan Bank, N.A.*, 584 F. Supp. 1080, 1083-1087 and 590 F. Supp. 1160 (S.D. N.Y. 1984); see also *Gerling International Insurance Co. v. Commissioner, supra* at 476.[6]) and that our disposition of this proceeding in respondent's favor is merited even though it will result in a substantial liability on the part of petitioner—a liability much greater than that

---

*Commissioner*, 649 F.2d 152 (2d Cir. 1981), affg. in part, revg. in part, and remanding 74 T.C. 260 (1980); *Tokarski v. Commissioner*, 87 T.C. 74 (1986); *Dellacroce v. Commissioner*, 83 T.C. 269, 287 (1984). See also *Gerling International Insurance Co. v. Commissioner*, 86 T.C. 468, 476 n. 5 (1986).

[6]For a comprehensive discussion of the relationship between discovery and foreign law compulsion, see American Law Institute Restatement of the Law, Foreign Relations of the United States (Revised) Tentative Draft No. 7, adopted in May 1986.

which may well have existed if Universale's books and records had been made available.

*An appropriate order will be entered.*

EXHIBIT A

UNITED STATES TAX COURT
Washington, D.C. 20217

| | | |
|---|---|---|
| GERLING INTERNATIONAL INSURANCE CO. | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | Docket No. 26765-83 |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| Respondent. | ) | |

ORDER

Respondent having, on February 11, 1985 filed a Motion for Order Compelling Petitioner to Answer Respondent's Interrogatories or to Impose Sanctions; a hearing having been held thereon on April 22, 1985; the Court having, on April 29, 1985, issued an order directing petitioner to respond to certain of said interrogatories and having indicated in said order the likely consequence of petitioner failing satisfactorily to do so; petitioner having submitted to respondent responses to said interrogatories; further hearing having been held on respondent's motion on November 20, 1985; respondent having, on December 30, 1985, filed a Motion for an Order Compelling Petitioner to Comply with Respondent's Response for Production of Documents or to Impose Sanctions; a hearing on both of respondent's said motions having been held on January 14, 1986, and the Court having, in a telephone conference held on March 3, 1986 informed the parties of its intention to issue this order and set the above-docketed case for trial on April 16, 1986, pursuant to the accompanying memorandum sur order, it is

ORDERED: that such part of respondent's motion as requests sanctions for petitioner's failure to respond satisfactorily to interrogato-

ries Nos. 45 and 81 is granted in that the following items are conclusively presumed to be true solely for the purposes of the above docketed case:

(1) At least from January 1, 1976 to the present and continuing, Robert Gerling owned substantially all the stock of Universale Reinsurance Company, Ltd, Zurich, Switzerland (hereinafter Universale);

(2) At least from January 1, 1976 to the present and continuing, by virtue of his position as Chairman of the Board of Directors and the owner of substantially all the stock of Universale, Robert Gerling was, and is, in a position to help make arrangements so as to enable petitioner to comply with respondent's request that there be made available to respondent any and all books and records which reflect the premiums, losses, expenses and other items subject to the reinsurance treaty between petitioner and Universale.

(3) Petitioner shall, on or before April 2, 1986, cause the aforesaid books and records of Universale to be produced or made available to respondent at the office of respondent's counsel or at such other location as may be mutually satisfactory. It is further

ORDERED: that nothing in this order shall be construed as discouraging the continued efforts by the parties to make arrangements for such production or availability, including the geographical location thereof, and the Court is prepared to render all appropriate assistance to the furtherance of such efforts. If the Court is informed that such arrangements have been made, the Court will take appropriate action to extend the aforementioned April 2, 1986 date and/or to make such other modifications of the within order as it deems advisable.

This order constitutes official notice to the parties of the contents thereof.

(S)   Theodore Tannewald, Jr.
THEODORE TANNEWALD, JR.
*Judge*

Dated: Washington, D.C.
March 12, 1986

EXHIBIT B

UNITED STATES TAX COURT
Washington, D.C. 20217

| | |
|---|---|
| GERLING INTERNATIONAL INSURANCE CO. | ) ) ) |
| Petitioner, | ) ) |
| V. | ) Docket No. 26765-83 ) |
| COMMISSIONER OF INTERNAL REVENUE, | ) ) |
| Respondent. | ) |

ORDER

The Court having issued an order dated March 12, 1986, directing petitioner, on or before April 2, 1986, to cause certain books and records of Universale Reinsurance Company, Ltd. (Universale) to be produced or made available to respondent and the Court having been informed in a telephone conference with Counsel for the parties on April 1, 1986, that petitioner would not comply with said order because Universale refused to make said books and records available, after due consideration and pursuant to the memorandum sur order, dated March 12, 1986 (later published as an opinion of the Court, 86 T.C. No. 31 (March 26, 1986), it is

ORDERED: that petitioner is hereby precluded from offering into evidence at the trial of this case any books and records of Universale which reflect the premiums, losses, expenses and other items subject to the reinsurance treaty between petitioner and Universale and/or any evidence reflecting information derived fronm said books and records, including but not limited to the annual statements received by petitioner from Universale (sometimes referred to as the "Exercise" and "Technical Figures,") the publications of the Swiss Insurance Department, and the deposition of Horst Kurnik, taken on April 18, 1984, including the accompanying exhibits.

This order constitutes official notice to the parties of the contents.

(S) Theodore Tannenwald, Jr.
THEODORE TANNENWALD, JR.
*Judge*

Dated: Washington, D.C.
April 9, 1986