THE HONGKONG AND SHANGHAI BANKING CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4075–80.    Filed November 5, 1985.

*Paul A. Teschner,* for ·the petitioner.
*Thomas C. Borders* and *Andrew P. Fradkin,* for the respondent.

OPINION

NIMS, *Judge*: This matter is before the Court on respondent's motion for an order under section 7456(b)[1] to require petition-

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954. All Rule references are to the Tax Court Rules of Practice and Procedure.

er to produce in Court certain books and records located in its home office in Hong Kong. Respondent determined deficiencies in petitioner's Federal income tax as follows:

| Year ended Dec. 31— | Deficiency |
| --- | --- |
| 1972 | $38,651 |
| 1975 | 142,156 |

The deficiencies result from adjustments made by respondent on petitioner's 1974, 1975, and 1976 Forms 1120F returns.

Two issues[2] remaining in the case which are relevant to the motion under consideration are (1) whether petitioner is entitled to an interest expense deduction taken in the amount claimed for 1976; and (2) whether petitioner is entitled to allocate indirect expenses of the head office in Hong Kong to the U.S. branches in the amounts claimed for 1974, 1975, and 1976.

Petitioner is a Hong Kong corporation primarily engaged in the banking business, worldwide. During the years in issue, petitioner had U.S. branch offices in New York, Chicago, and Seattle. It also had assets and operations in most western nations throughout the world. Foreign corporations which earn income which is effectively connected with the conduct of a trade or business within the United States must report annually on Form 1120F, U.S. Income Tax Return of a Foreign Corporation. Petitioner timely filed Forms 1120F for its taxable years 1974, 1975, and 1976.

Petitioner computed its U.S. income taxes for 1974, 1975, and 1976 based upon worldwide gross income, gross income from sources within the United States (effectively connected income), the percentage of worldwide income which constituted effectively connected income, the total worldwide head office administrative expenses, and the head office administrative expenses allocable to effectively connected income, respectively, as follows:

| | 1974 | 1975 | 1976 |
| --- | --- | --- | --- |
| A. U.S. effectively connected gross income | $8,726,348 | $5,878,593 | $6,024,027 |
| B. Worldwide gross income | 534,661,745 | 515,149,915 | 457,777,116 |

[2] A third issue remaining in the case involves the disallowance of a management consulting fee claimed as a deduction for 1976. However, books and records located in Hong Kong are not relevant to this issue.

|  | 1974 | 1975 | 1976 |
|---|---|---|---|
| C. A divided by B | 1.632% | 1.1141142% | 1.315930% |
| D. Worldwide head office administrative expenses | $8,931,824 | $14,705,847 | $10,899,214 |
| E. Head office administrative expenses allocated to the U.S. | 145,767 | 167,815 | 143,426 |

In addition, petitioner claimed an interest expense deduction of $6,332,249 in computing its U.S. income taxes for 1976 as follows:

| Item | 12/31/75 | 12/31/76 | Average |
|---|---|---|---|
| A. Worldwide assets | $6,050,808,676 | $7,353,794,108 | $6,702,301,392 |
| B. U.S. effectively connected assets | 210,185,789 | 191,764,620 | |
| Less: Inter-branch balances | (62,184,219) | (23,448,701) | |
| Net: U.S. effectively connected assets | 148,001,570 | 168,315,919 | 158,158,745 |
| C. Worldwide interest expense | | 268,342,031 | |

D. $\dfrac{B}{A} \times C$ = Interest expense allocated to U.S. operations, namely:

$$\frac{\$158,158,745}{\$6,702,301,392} \times \$268,342,031 = \underline{\$6,332,249} \text{ (interest expense deduction)}$$

Respondent's Office of International Operations audited petitioner's Forms 1120F for 1974, 1975, and 1976. During the course of the audit, respondent's agent requested the right to inspect the books and records maintained at petitioner's home office in Hong Kong. This request was refused.

Respondent alleges in his moving papers that:

Petitioner's position at the audit was that substantiation for the disputed deductions would be provided by statements of the Head Office charges account verified by reports and statements certified by Certified Public Accountants retained by petitioner in the ordinary course of its business. To date, petitioner has not modified its position and continues to maintain that its books and records are sacrosanct.

Petitioner's multipart response to respondent's motion may be fairly summarized as follows:

(1) Respondent should simply identify the books and records located in Hong Kong which respondent deems relevant in this case, and thereafter it would be sufficient for petitioner merely to produce the specifically identified books and records. Respondent need not be allowed to examine petitioner's books and records of original entry in Hong Kong.

(2) Respondent changed his position regarding the reason for disallowance of the interest expense deduction after a so-called 30-day letter was sent to petitioner. In the deficiency notice, respondent based the disallowance merely on lack of substantiation, whereas the earlier disallowance gave other reasons.

(3) Respondent refused to discuss settlement on any basis because of petitioner's refusal of access to its books and records.

(4) Petitioner's head office books and records are replete with trade secrets and highly confidential aspects of its worldwide banking business. Also, unlike the United States, which has a Freedom of Information Act and where taxpayer records are otherwise on occasion made available to third parties, it is the unwavering policy of Hong Kong to guarantee that all taxpayer records shall remain inviolate. Section 4 of chapter 112 (Inland Revenue Ordinance) of the Laws of Hong Kong provides in part as follows:

Official secrecy.

4. (1) Except in the performance of his duties under this Ordinance, every person who has been appointed under or who is or has been employed in carrying out or in assisting any persons to carry out the provisions of this Ordinance shall preserve and aid in preserving secrecy with regard to all matters relating to the affairs of any person that may come to his knowledge in the performance of his duties under this Ordinance, and shall not communicate any such matter to any person other than the person to whom such matter relates or his executor or the authorized representative of such person or such executor, nor suffer or permit any person to have access to any records in the possession, custody or control of the Commissioner. (Amended, 9 of 1958, s.3)

(5) This case should be governed by section 982[3] rather than section 7456(b).

---

[3]Sec. 982(a), which states the general rule, provides:

SEC. 982(a). GENERAL RULE.—If the taxpayer fails to substantially comply with any formal document request arising out of the examination of the tax treatment of any item (hereinafter in this section referred to as the "examined item") before the 90th day after the date of the mailing of such request on motion by the Secretary, any court having jurisdiction of a civil proceeding in

(6) If petitioner were a U.S.-based company, the question of substantiation of the questioned deductions would have been resolved without litigation. Therefore, "it might be in the best interest of all concerned if this case could be limited to the two legal questions at issue, to wit: (1) Is Petitioner entitled to use the 'fungibility' method of computing its interest expense deduction for 1976; and (2) Does Petitioner's Marine Midland stock constitute an investment or is' it effectively connected with Petitioner's United States Business?"

Section 7456(b) was new with the 1954 Code and has remained unchanged since the date of enactment. It provides:

SEC. 7456(b). PRODUCTION OF RECORDS IN THE CASE OF FOREIGN CORPORA-TIONS, FOREIGN TRUSTS OR ESTATES AND NONRESIDENT ALIEN INDIVIDU-ALS.—The Tax Court or any division thereof, upon motion and notice by the Secretary, and upon good cause shown therefor, shall order any foreign corporation, foreign trust or estate, or nonresident alien individual, who has filed a petition with the Tax Court, to produce, or, upon satisfactory proof to the Tax Court or any of its divisions, that the petitioner is unable to produce, to make available to the Secretary, and, in either case, to permit the inspection, copying, or photographing of such books, records, documents, memoranda, correspondence and other papers, wherever situated, as the Tax Court or any division thereof, may deem relevant to the proceedings and which are in the possession, custody or control of the petitioner, or of any person directly or indirectly under his control or having control over him or subject to the same common control. If the petitioner fails or refuses to comply with any of the provisions of such order, after reasonable time for compliance has been afforded to him, the Tax Court or any division thereof, upon motion, shall make an order striking out pleadings or parts thereof, or dismissing the proceeding or any part thereof, or rendering a judgment by default against the petitioner. For the purpose of this subsection, the term "foreign trust or estate" includes an estate or trust, any fiduciary of which is a foreign corporation or nonresident alien individual; and the term "control" is not limited to legal control.

The regulations promulgated under section 7456(b) simply paraphrase the Code section. Sec. 301.7456–1, Proced. & Admin. Regs. Neither our own research nor the written submissions by the parties have disclosed any prior case law under section 7456(b), and there is a paucity of legislative history. The so-called detailed discussion of section 7456(b) in the reports under H.R. 8300 of both the House and Senate

which the tax treatment of the examined item is an issue shall prohibit the introduction by the taxpayer of any foreign-based documentation covered by such request.

simply parrot the statutory language. See 3 U.S. Code Cong. & Adm. News 4581, 5263, 83d Cong., 2d Sess. (1954). Consequently, we are left on our own to discern the parameters of section 7456(b). Fortunately, the statutory language is straightforward and relatively unambiguous.

In his motion, respondent asks that petitioner be ordered to produce in Court books and records from petitioner's home office in Hong Kong, described in a rider attached to the motion as follows:

1. All books, records and documents which were maintained at the petitioner's Head Office with respect to the calculation of petitioner's Gross Income of the Bank From All Sources for the years 1974, 1975 and 1976, including but not limited to the records examined by Peat, Marwick, Mitchell and Co. in preparation of Section I of the *Statement of Certain Items Appearing in the Head Office Records* for the years 1974, 1975 and 1976 attached hereto as Exhibits A, B and C, respectively.

2. All books, records and documents which were maintained at the petitioner's Head Office with respect to the calculation of Head Office and General Administrative Expenses for the years 1974, 1975 and 1976, including but not limited to the records examined by Peat, Marwick, Mitchell and Co., in preparation of Section II of the *Statement of Certain Items Appearing in the Head Office Records* for the years 1974, 1975 and 1976 attached hereto as Exhibits A, B and C, respectively.

3. All books, records and documents maintained at the petitioner's Head Office with respect to the calculation of petitioner's total world wide interest expense for the year 1976, including but not limited to the records examined by Peat, Marwick, Mitchell and Co., and/or Price Waterhouse and Co., in preparation of the *Statement of Assets and Interest Paid* attached as Exhibit D.

Respondent argues that the accountant's reports, which petitioner seeks to stipulate, are being offered to prove the truth of the matters contained therein and do not fall within any exception to the hearsay rule contained in rules 803 and 804, Federal Rules of Evidence (FRE). In this connection, FRE rule 803(24) deals with the admissibility of statements having "equivalent circumstantial guarantees of trustworthiness," and FRE rule 804, with the admissibility of certain material in "Declarant Unavailable" situations. At the hearing on the section 7456(b) motion, petitioner cited our opinion in *Karme v. Commissioner*, 73 T.C. 1163, 1180 (1980), affd. 673 F.2d 1062 (9th Cir. 1982), in support of petitioner's position that secondary evidence should be admitted under FRE rules 803(24) and 804(b)(5), in lieu of a section 7456(b) order. We would simply

point out that in *Karme*, unlike the case before us, the Commissioner did not seek access to the taxpayer's books and records pursuant to a section 7456(b) order, which, if made, obviates the need for resort to the evidentiary rules.

We need not explore the ramifications of the above-mentioned hearsay exceptions in the context of this case because we believe that a primary purpose of section 7456(b) was to forestall just such an argument as petitioner is making, namely, that secondary sources such as the Peat, Marwick, Mitchell & Co. reports have equivalent circumstantial guarantees of trustworthiness, so taxpayers such as petitioner may thereby be relieved of providing the IRS access to primary sources located abroad.

Respondent also argues that he is entitled to rely upon FRE rule 1002, which requires the production of original documents, and FRE rule 1006, which requires that original voluminous documents shall be made available for examination and copying where summaries are offered in their place. We think that for purposes of this case section 7456(b) also subsumes the thrust of these sections.

In his trial memorandum, respondent makes the following argument in support of the order which he seeks here:

The computations of petitioner's interest expense deduction for 1976 and its allocated head office expense deductions for 1974, 1975 and 1976 are based on the relationship of petitioner's United States operations to its total world-wide operations. In computing its interest expense deduction for 1976, petitioner calculated the ratio of adjusted U.S. Effectively Connected Assets to its world-wide assets to determine that percentage of its gross world-wide interest expense which is deductible on its United States income tax returns. Similarly, in computing its head office expense deductions petitioner calculated the ratio of U.S. Effectively Connected Gross Income to its world-wide gross income to [determine] that percentage of its total head office administrative expenses which are allocable to its United States income tax returns.

Inspection and verification of each component of the ratios described above are essential to determine the propriety of the deductions claimed on petitioner's income tax returns. The various decisions and judgments made by petitioner and its advisors in arriving at the claimed deductions should be subject to scrutiny by respondent and determination by the Court. For example, the mere fact that a certain expense may be "deductible" as an administrative expense according to the accounting principles applied in Hong Kong does not guarantee that the expense is deductible for federal income tax purposes. However, throughout the audit of this case and continuing during this proceeding, petitioner has refused to permit respon-

dent to inspect its books and records maintained at its head office in Hong Kong. Thus, respondent has been unable to verify the amounts claimed by petitioner as to the value of its world-wide assets, its total world-wide income, its total world-wide interest expense and its total head office expenses. Rather, petitioner would have respondent and, presumably this Court, rely on the statements of its employees and agents and the workpapers of its auditors.

For the reasons above stated by respondent, we think he has shown "good cause" for some form of order under section 7456(b).

We turn now to the type of order to be granted. We agree with petitioner that it would be wholly impractical for petitioner to produce in Court the books and records specified in the above-quoted rider. Section 7456(b) deals with this kind of contingency, however, by directing the Tax Court to order the foreign entity—petitioner—to make the relevant "books, records, documents, memoranda, correspondence and other papers" (herein called books and records), *wherever situated*, available to the Commissioner for inspection, copying, or photographing. Since the books and records are located in Hong Kong, an appropriate order under section 7456(b) will direct petitioner to make relevant books and records available to respondent in Hong Kong.

We cannot agree that respondent should be forced to speculate, as petitioner seems to be urging, as to what books and records might be material and relevant in this case, based simply upon a perusal of the Peat, Marwick, Mitchell & Co. and Price Waterhouse & Co. reports referred to in the above-quoted rider. As the second circuit noted in *United States v. Arthur Young & Co.*, 677 F.2d 211, 216 (2d Cir. 1982) (in delineating the parameters of an administrative summons under section 7602):

Before the IRS knows where the issues lie, it has no choice but to utilize a general summons. Similarly, before the Service knows what the documents contain, it cannot describe them with any specificity. If the target's own opinion of relevance controlled, the entire audit process would be eviscerated. * * *

On the other hand, we agree with petitioner that any order fashioned in response to respondent's motion should not mandate to respondent's agents a general rummaging through all of petitioner's books and records, without limitation.

We think the basic criteria for the scope of a section 7456(b) order should be patterned after those for judicial enforcement of an administrative summons set forth in *United States v. Powell*, 379 U.S. 48, 57–58 (1964). Based upon *Powell*, we formulate the following guidelines, namely, (1) that the investigation is to be conducted pursuant to a legitimate purpose, (2) that the inquiry must be relevant to the purpose, (3) that the information sought is not already within the Commissioner's possession, and (4) that the procedural steps required by section 7456(b) have been followed.

First applying the third and fourth of the above criteria to the case before us, we observe that the information sought is not already within the Commissioner's possession because he has yet to see the books and records, and he has complied with the requisite procedural steps by duly filing and serving the motion and notice required by section 7456(b). This leaves the criteria of "legitimate purpose" and "relevant to the purpose" to be dealt with. We agree with respondent that he must be permitted to examine petitioner's books and records in Hong Kong, but legitimacy and relevance require that the scope of the examination be limited to the challenged deductions, namely, the deduction for the indirect general and administrative expenses charged to petitioner's U.S. branches and petitioner's interest expense allocable to its U.S. operations.

At the time of the hearing on respondent's motion, the Court took the testimony of Alfred Ramsey Petrie, Executive Director for the United States of the Hong Kong Bank. Petrie testified that petitioner conducts banking operations in nearly every western country in the world and that less than one-third of its assets are located in the United States. We accept that testimony as truthful. Therefore, notwithstanding the Commissioner's legitimate interest in inspecting petitioner's books and records located in Hong Kong insofar as they relate to petitioner's U.S. operations, we think it would be highly inappropriate for this Court to apply section 7456(b) in a manner which might encourage a tax examination by the Commissioner of petitioner's operations worldwide.

Consideration of principles of international law and comity are undoubtedly involved as a preliminary to the promulgation of any section 7456(b) order. See *Garpeg, Ltd. v. United States*, 583 F. Supp. 789, 794–799 (S.D.N.Y. 1984); see also

*United States v. Toyota Motor Corp.*, 569 F. Supp. 1158, 1162 (C.D. Cal. 1983). But at the hearing on the section 7456(b) motion, respondent's counsel agreed that the scope of the order should be limited to inspection in Hong Kong of books and records relevant to the challenged deductions,[4] and petitioner's counsel stated (contrary to the position taken in petitioner's pre-hearing brief) that the Hong Kong Bank Secrecy Act is not involved here. Without further exploration of the ramifications of that act, we deem this to be a waiver by petitioner of any privilege thereunder. Presumably petitioner is free to take this step because it is petitioner's own affairs, rather than those of a third party (cf. *Garpeg, Ltd. v. United States, supra*), which are under scrutiny here. Thus, the problem of resolving conflicting interests of foreign nations and the United States which vexed the District Courts in *Garpeg* and *Toyota*, is not presented here.

We need not dwell at length on petitioner's remaining objections to a section 7456(b) order. First, we remind petitioner that trials in the Tax Court are de novo, so that the fact that the Commissioner may or may not have changed his theory of the case after sending petitioner a 30-day letter, or that for whatever reason respondent refused to discuss settlement, need not concern us here. See, e.g., *Greenberg's Express v. Commissioner*, 62 T.C. 324, 328 (1974).

Petitioner also alleges that "Congress has now spoken on the subject and has rejected the professed desire of Respondent to conduct worldwide audits of the books and records of foreign corporations," referring to the enactment of section 982 by section 337 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97–248, 96 Stat. 629. Petitioner seems to be saying that Congress, by enacting section 337 of TEFRA, sub silentio repealed section 7456(b).

We reject petitioner's interpretation of the scope of section 982. The Senate report under TEFRA made it clear that section 982 is intended to supplement the Commissioner's administrative summons power to cover those situations where a procedure is necessary to insure timely production of documents

---

[4]THE COURT: * * * One thing I'm not at all interested in doing is facilitating the Commissioner in making a broad ranging examination of the Bank of Hong Kong and Shanghai's tax affairs. * * *

MR. BORDERS [respondent's counsel]: I completely agree, Your Honor. * * *

held abroad. Conf. Rept. 97–760, to accompany H.R. 4961, 1982–2 C.B. 600, 657–660 (quoting the Senate report). The Conference report added that jurisdiction over a proceeding to quash a summons issued pursuant to section 982 is in the appropriate District Court. Conf. Rept. 97–760, *supra*, 1982–2 C.B. at 659.

Section 7456(b), on the other hand, applies exclusively to the Tax Court, which has no jurisdiction over administrative summons. There is no indication in either section 982, itself, or in its legislative history that section 7456(b) was thereby intended to be superseded, and we so hold.

A final word. Respondent's section 7456(b) motion was filed on August 16, 1985, only 19 days before the trial of this case was scheduled to commence. Under other circumstances, we might have been disposed to deny the motion summarily as being untimely, since any order under the motion would necessarily cause a postponement of the trial. Respondent represents, however, that since the two issues to which the motion relates are essentially questions of substantiation, a lengthy trial on these issues will in all probability be avoided if respondent can be assured through inspection that petitioner's books and records in Hong Kong support the deductions claimed. Petitioner does not strenuously challenge this representation, and we have accordingly entertained the motion. We would observe, nevertheless, that section 7456(b) being substantially analogous to discovery, we would expect the parties in future cases to comply with the time constraints relating to discovery contained in Rule 70(a)(2).

So as to avoid repeating in this opinion the terms and conditions upon which the section 7456(b) order is granted, the provisions of the order are appended as Appendix A. The order reflects terms agreed upon by the parties, as requested by the Court at the conclusion of the hearing on the section 7456(b) motion.

*An appropriate order will be entered.*

APPENDIX A

UNITED STATES TAX COURT
Washington, D.C. 20217

THE HONGKONG AND SHANGHAI ) 
BANKING CORPORATION, ) 
                  Petitioner, ) 
           v. ) 
                          )   Docket No. 4075–80 
                          ) 
COMMISSIONER OF INTERNAL REVENUE, ) 
                          ) 
                          ) 
               Respondent. )

ORDER

For the reasons expressed in our Opinion filed this date, and served herewith and for good cause appearing of record, it is

ORDERED that Respondent's Motion for an Order under Section 7456(b), I.R.C. 1954, is granted subject to the conditions set forth below. It is further

ORDERED that:

1. Within 45 days from the date of this Order, respondent may visit petitioner's head offices in Hong Kong and commence and within a reasonable time complete an audit of those portions of books, and of the papers, records and documents, located in petitioner's head office in Hong Kong which are relevant to the issues in this case insofar as those portions of books, and those papers, records and documents, are identified in paragraph 2, below.

2. Petitioner shall make available to respondent's auditors the following portions of books, and the following papers, records and documents:

A. Those portions of petitioner's books, and its papers, records and documents, which are relevant to, or were used in, the computation of petitioner's worldwide gross income from all sources for the calendar years 1974, 1975 and 1976. For purposes of identification, the items referred to are the portions of books, and the papers, records and documents, upon which petitioner, and petitioner's chartered accountants and certified public accountants, relied in computing petitioner's "gross income of the bank from all sources" for the years 1974, 1975 and 1976 in the respective amounts of HK $2,629,915,125, HK $2,596,355,570 and HK $2,229,795,986.

B. Those portions of petitioner's books, and its papers, records and documents, which are relevant to, or were used in, the computation of petitioner's head office and general administrative expenses for the calendar years 1974, 1975 and 1976. For purposes of identification, the items referred to are the portions of books, and the papers, records and documents, upon which petitioner, and petitioner's chartered accountants and certified public accountants, relied in computing petitioner's "head

office and general administrative expenses" for the years 1974, 1975 and 1976 in the respective amounts of HK $43,934,208, HK $80,588,809 and HK $58,855,364.

C. Those portions of petitioner's books, and its papers, records and documents, which are relevant to, or were used in, the computation of petitioner's total worldwide interest expense for the calendar year 1976. For purposes of identification, the items referred to are the portions of books, and the papers, records and documents, upon which petitioner, and petitioner's chartered accountants and certified public accountants, relied in computing petitioner's "interest paid in 1976" of HK $1,254,498,997.

3. In accordance with the provisions of Section 7456(b), I.R.C. 1954, petitioner shall permit respondent to copy or photograph at respondent's expense any of those portions of its books, and its papers, records and documents, which are within the scope of the inspection permitted by paragraphs 2A., 2B. and 2C., above.

Arthur L. Nims, III<br>Judge

Dated: Washington, D.C.