GERLING INTERNATIONAL INSURANCE COMPANY,
PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 26765-83.     Filed March 26, 1986.

*Lawrence Gerzog*, for the petitioner.
*David Brodsky*, for the respondent.

OPINION

TANNENWALD, *Judge*: This case is before us on two discovery motions by respondent: (1) A motion to compel answers to respondent's interrogatories or to impose sanctions, and (2) a motion for order compelling petitioners to comply with respondent's request for the production of documents or to impose sanctions.

Based upon the materials presently of record, the background for our consideration of these two motions[1] is as hereinafter set forth.

Respondent determined deficiencies against petitioner as follows:

---

[1] Our recital of the facts is solely for the purposes of disposing of respondent's motions and may not necessarily conform to the facts which may ultimately be developed in the event of further proceedings therein, including trial.

| TYE Dec. 31— | Deficiency |
|---|---|
| 1973 | $885 |
| 1974 | 2,043 |
| 1976 | 1,439,676 |
| 1977 | 1,917,174 |
| 1978 | 2,503,934 |

The basic issues in the case arise from petitioners' dealings as a reinsurer of 20 percent of the risks of Universale Reinsurance Co., Ltd. (Universale), a Swiss corporation engaged in the insurance business.[2] Essentially, what respondent has done is to accept petitioner's reporting on its tax returns of its share of the gross premiums from the risks of Universale and disallow in their entirety the deductions for its share of the losses and expenses attributable to those risks.

Petitioner is a Delaware corporation with its principal office in Wilmington, Delaware. One Robert Gerling (Gerling) is the president and a director of petitioner. Gerling is a U.S. citizen, but spends substantially all, if not all, his time outside the United States. During the taxable years at issue, Gerling owned 8.82 percent of petitioner's stock. The balance of petitioner's stock was owned by persons whose relationship with Gerling and/or Universale cannot presently be determined.

The following is a translation of the pertinent provisions of a treaty between Universale and petitioner (referred to in the treaty as "Retrocessionaire").

### Art. 1.

Universale undertakes to share with Retrocessionaire the reinsurance business to the extent thereof as hereinafter exactly outlined in the addendum and Retrocessionaire obligates itself to accept such share unquestioningly.

This participation includes any facultative commitments which Universale accepts based on the original treaties retroceded herewith.

### Art. 2.

This retrocession is done under the conditions as itemized in the addendum. In all other respects the general terms of the original treaties are binding.

---

[2]The petition alleges that Universale is in the reinsurance business, an allegation which respondent has denied on information and belief. Consequently, we have described Universale's business as "insurance business," a shorthand, nontechnical description which will serve our purposes at the moment.

### Art. 3.

The liability of Retrocessionaire starts and terminates simultaneously with the one of Universale; and generally, Retrocessionaire to the extent of its share assumes in all instances and under all circumstances the fate of Universale emanating from the original treaties. This shall also be the case in the event that a ceding company for whatsoever reasons does not fullfil its commitments to Universale.

The entire business contact with the ceding companies shall be handled exclusively by Universale; Retrocessionaire acknowledges to the extent of its share all payments made by Universale to any ceding company and shares in all results which affect Universale to the extent of its quota.

### Art. 4.

Retrocessionaire shall assume all commitments which will be entered in the future between Universale and the ceding companies with reference to the insurance business which is the subject of this treaty and acknowledges the same as binding within the limits of its quota.

In the event of a change in the share of Universale in the original treaties, it reserves the right likewise to change or extinguish the share of Retrocessionaire after giving notice to that effect.

### Art. 5.

Retrocessionaire waives delivery of a Borderaux. However, it shall receive regularly summarizations of premium, commissions and loss payments for the same period of time for which Universale receives the same or accounts therefore.

### Art. 6.

Premium reserve and other deposits by Retrocessionaire and their interest rate shall be as itemized in the addendum.

### Art. 7.

Universale shall render an account to Retrocessionaire as soon as possible after the receipt of the original current accounts in the same currency and for the same period of time. Within two weeks after the receipt of the accounting, Retrocessionaire shall make objections to Universale, otherwise the account is considered accepted. Balances shall be equalized in the same way as it is done between Universale and its ceding companies if nothing else is agreed upon.

The share of Retrocessionaire in losses payable by Universale shall become due at the same day and shall be put at the disposal of Universale on which Universale itself must make payment.

### Art. 8.

Retrocessionaire shall have the right through an authorized agent to inspect in the office of Universale all the files which affect the risks under this treaty. This right of inspection, however, shall not permit delay in the liquidation of the respective agreed-upon obligations.

Petitioner has filed an initial response and two supplementary responses to respondent's interrogatories. As a consequence, the issue has been narrowed to the adequacy of petitioner's responses to certain of the interrogatories. Those interrogatories and responses are as follows:

(1) *Interrogatory 45.*

Was Robert Gerling a shareholder of Universale Reinsurance Company, Ltd., Zurich, Switzerland (hereinafter Universale) at any time between January 1, 1976, and the present time? If the answer is yes, please list the amount of said holdings and the date thereof.

*Initial Answer*

After having made reasonable inquiry, information known or readily obtainable by petitioner is insufficient to enable petitioner to answer the substance of this interrogatory.

*Supplementary Answer*

Petitioner now understands that Swiss law requires a director of corporation to be a shareholder thereof. Based on this information, petitioner believes that Robert Gerling would be required to be a shareholder of Universale, since he is Chairman of the Board of Universale. Petitioner has no knowledge of the amount of Mr. Gerling's holdings.

*Second Supplementary Answer*

As previously disclosed, Robert Gerling was and is a shareholder of Universale. Mr. Gerling is not the sole shareholder of Universale. Furthermore, stockholders of Swiss corporation, pursuant to Swiss law, do not have the right to direct the management of the corporation.

(2) *Interrogatory 81.*

Did Robert Gerling perform any activities, whether paid or not, in the management or operations of Universale at any time between January 1, 1976 and the present? If so, please describe said activities, the date(s) thereof, and the estimated time spent by Gerling performing said activities.

*Initial Answer*

Upon information and belief, Robert Gerling has performed the activities normally associated with the position of Chairman of the Board of Directors from January 1, 1976 to the present.

*Supplementary Answer*

As previously disclosed, Robert Gerling was and is chairman of Universale's Board of Administrators (the Board). The Board is a supervisory body which acts only by resolution of the majority. Management of Universale is done by a Manager, who is not Robert Gerling. The Board of Administrators does not have a direct influence on the

management of the corporation. The members of the Board of Administrators are not employees of the corporation.

Respondent has attempted to obtain access through petitioner to the books and records of Universale in respect of the transactions which are the subject of petitioner's reinsurance undertaking, but petitioner has been unable to obtain such access. It appears that this lack of success has been based in large part on petitioner's claim that it does not have control over Universale and/or the impact of restrictions under the laws of Switzerland. Having thus failed to obtain such access, respondent served petitioner with a request for production of documents and, upon the failure of petitioner to comply, filed his motion to compel production or impose sanctions. Respondent's request covered the following:

(1) Those portions of Universale Reinsurance Co., Ltd.'s (Universale) books, and its papers, records, and documents, which are relevant to, or were used in, the computation of petitioner's claimed losses paid for the years 1976, 1977, and 1978 in the amounts of $1,955,252, $2,250,633, and $2,620,262, respectively. For purposes of identification, the items referred to are the portions of books, and the papers, records, and documents, upon which Universale, and Universale's chartered accountants and certified public accountants, relied in computing Universale's total losses paid and petitioner's share of said losses paid for such years.

(2) Those portions of Universale's books, and its papers, records, and documents, which are relevant to, or were used in, the computation of petitioner's claimed underwriting expenses for the years 1976, 1977, and 1978 in the amounts of $684,908, $727,020, and $923,164, respectively. For purposes of identification, the items referred to are the portions of books, and the papers, records, and documents, upon which Universale, and Universale's chartered accountants and certified public accountants, relied in computing Universale's total underwriting expenses and petitioner's share of said expenses for such years.

Petitioners have filed the following objections to respondent's request:

1. Petitioner objects to request number 1 on the grounds that (a) discovery is or reasonably should be closed in this matter; (b) petitioner is not in possession custody or control of the requested documents; (c) the request is not appropriately specific; (d) the request is unduly burdensome, in that it requests production in the United States; and (e) the documents requested are irrelevant to the subject matter of the action.

2. Petitioner objects to request number 2 on the grounds that (a) discovery is or reasonably should be closed in this matter; (b) petitioner is not in possession custody or control of the requested documents; (c) the request is not appropriately specific; (d) the request is unduly burdensome, in that it requests production in the United States; and (e) the documents requested are irrelevant to the subject matter of the action.

We deal first with one aspect of this proceeding which affects both motions by respondent. Petitioner contends that petitioner's only obligation to the U.S. tax authorities was to report the net amount it received from (in the event of a profit) or the net amount it paid to (in the event of a loss) Universale. Consequently, petitioner contends that issues as to common control of petitioner and Universale and as to what is shown in the books and records of Universale are irrelevant and therefore not subject to discovery. We disagree.

Petitioner's obligation as a U.S. taxpayer was to report the activities relating to its reinsurance treaty with Universale in the same manner as it was required to report the same to the insurance regulatory authorities, i.e., on the basis of an annual statement approved by the National Association of Insurance Commissioners. Sec. 1.832-4(a)(1) and (2), Income Tax Regs. It appears that petitioner, in its report to the regulatory agency of the State of Delaware, was required to report, and in fact did report, its share of the premiums, losses, and expenses of the reinsurance business of Universale covered by the treaty. Such manner of reporting is consistent with the agency relationship that usually exists between the reinsurer and the reinsured—a relationship which is totally confirmed by the wording of the treaty itself. See *Colonial Surety Co. v. United States*, 147 Ct. Cl. 643, 178 F. Supp. 600, 602 (1959). Moreover, only through such reporting can the State regulatory agency be provided with sufficient information for it to determine whether the reinsurance company is assuming

risks consistent with sound practice. See *Continental Insurance Co. v. United States*, 200 Ct. Cl. 552, 474 F.2d 661, 667 (1973). The cases cited by petitioner[3] are clearly distinguishable. They involved the proper treatment, for Federal income tax purposes, of *conceded* amounts of premium income, losses, and expenses. The problem in this case is the proper amounts of those items.[4]

We next address the adequacy of petitioner's responses to respondent's interrogatories 45 and 81. We are satisfied that these interrogatories were proper in terms of relevancy to the matters at issue herein. See *La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 171 (D. Del. 1973) ("discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no *possible bearing* upon the subject matter of the action"). (Emphasis added.) See also *Brunswick Corp. v. Suzuki Motor Co.*, 96 F.R.D. 684 (E.D. Wis. 1983). As to interrogatory 45, petitioner's response merely states that Robert Gerling is a shareholder, but not the sole shareholder of Universale—an answer which leaves open a wide range of shareholding, the extent of which is clearly pertinent. With respect to interrogatory 81, petitioner's response goes only to the formality and not the substance of Robert Gerling's management relationship to Universale. We think the substance of that relationship is critical. We therefore conclude that petitioner's response to interrogatories 45 and 81 is insufficient. As the record will show, petitioner has been given more than ample opportunity to furnish a sufficient response to the interrogatories. Accordingly, we will order, as a sanction for failure of petitioner so to respond, that:

(1) At least from January 1, 1976, to the present and continuing, Robert Gerling owned substantially all of the stock of Universale; and

(2) At least from January 1, 1976, to the present and continuing, by virtue of his position as Chairman of the

---

[3] *Security Benefit Life Insurance Co. v. United States*, 726 F.2d 1491 (10th Cir. 1984); *Mutual Savings Life Insurance Co. v. United States*, 488 F.2d 1142 (5th Cir. 1974); *Beneficial Life Insurance Co. v. Commissioner*, 79 T.C. 627 (1982); *Kentucky Central Life Insurance Co. v. Commissioner*, 57 T.C. 482 (1972).

[4] To be sure, respondent has only sought to disallow the losses and expenses. Presumably, he has left the premium income untouched because he had no information upon which to calculate additional premium income, if any.

Board of Directors and owner of substantially all of the stock of Universale, Robert Gerling was, and is, in a position to cause Universale to act favorably upon a request by petitioner to make available to respondent, under the arrangements which respondent is prepared to make, any and all books and records of Universale which reflect the premiums, losses, expenses, and other items subject to the reinsurance treaty between petitioner and Universale.

Based upon the foregoing sanctions, the Court will order the petitioner to cause to be produced or made available to respondent on or before April 2, 1986, the books and records of Universale which reflect the premiums, losses, expenses, and other items subject to the reinsurance treaty between petitioner and Universale. If petitioner shall fail so to produce or make available such books and records, the Court intends, upon appropriate notification by respondent of which respondent shall simultaneously inform petitioner, to preclude petitioner from introducing said books and records, or any portion thereof, at the trial now scheduled for April 17, 1986, or any evidence, including testimony, reflecting information derived from said books and records; including the annual statements received by petitioner from Universale (referred to as the "Exercise" and "Technical Figures") and the publications of the Swiss Insurance Department. We are not persuaded to do otherwise by any of petitioner's other objections. In the same vein, to the extent that respondent's motions to compel responses to interrogatories and to produce documents request the sanction of dismissal, they will be denied. See *Societe Internationale, Etc. v. Rogers*, 357 U.S. 197 (1958), hereinafter discussed.

We have reached the foregoing conclusions as to the disposition of respondent's motions only after careful consideration of the difficulties which petitioner has faced, and will face, in complying with respondent's requests for answers to interrogatories and for production of documents and the Court's disposition of respondent's motions in respect thereto. In so doing, we have been mindful of the teachings of *Burnet v. Houston*, 283 U.S. 223 (1931), that difficulties of proof do not relieve a taxpayer from the

necessity of satisfying his burden of proof[5] and of *Societe Internationale, Etc. v. Rogers, supra,* which deals with appropriate sanctions where a party is inhibited by provisions of foreign law from complying with another party's discovery requests. Cf. *Hongkong & Shanghai Banking Corp. v. Commissioner,* 85 T.C. 701 (1985). We have also taken into account the need for the balancing of interests of the United States and of the foreign nation involved. Cf. *Garpeg, Ltd. v. United States,* 583 F. Supp. 789, 794-799 (S.D. N.Y. 1984); *United States v. Toyota Motor Corp.,* 569 F. Supp. 1158, 1162 (C.D. Cal. 1983); *American Industrial Contracting, Inc. v. Johns-Manville Corp.,* 326 F. Supp. 879 (W.D. Pa. 1971).

In *Societe Internationale, Etc. v. Rogers, supra,* the taxpayer, a Swiss holding company which was claiming ownership of certain property seized by the United States Alien Property Custodian during World War II, was ordered to produce certain records from its Swiss bank. As is the case herein, the taxpayer resisted on the ground that production of the records (beyond those already produced) was prohibited by Swiss law. The trial court had found that common control of the taxpayer and the Swiss banking firm existed in the person of one H.S. (see 111 F. Supp. 435, 440 (D. D.C. 1953)), and decided that the taxpayer's failure to produce the records justified dismissal of the case. The Circuit Court of Appeals affirmed (243 F.2d 254 (D.C. Cir. 1957)), but the Supreme Court reversed, holding that, in light of the good-faith efforts made by the taxpayer, the sanction of dismissal was inappropriate. The Court went on to observe, however, that the taxpayer would not profit by its inability to tender the records because it still had the ultimate burden of proof and suggested that the trial court might explore other possibilities looking toward the taxpay-

---

[5]Under Rule 142(a), Tax Court Rules of Practice and Procedure, the burden of proof and of going forward with the evidence in this case is on petitioner. Although not so requested by petitioner, we have considered the possibility of shifting the burden of going forward to respondent on the ground that his blanket disallowance of all deductions relating to petitioner's reinsurance activities was arbitrary and capricious (cf. *Marx v. Commissioner,* 179 F.2d 938 (1st Cir. 1950), affg. a Memorandum Opinion of this Court), but have concluded that we should not do so because such a description of respondent's action would be erroneous in light of respondent's inability to obtain the underlying data. Under these circumstances, it cannot be said that respondent's actions were "without rational foundation and excessive." See *United States v. Janis,* 428 U.S. 433, 441 (1976) (quoting *Helvering v. Taylor,* 293 U.S. 507, 514-515 (1935)). See also *Gross v. Commissioner,* T.C. Memo. 1966-125.

er's fuller compliance with the order to produce. See 357 U.S. at 212-213. In this latter connection, as the record herein will show, the Court and counsel for the parties, under several possible approaches, have attempted without success to open up avenues of access to the underlying books and records. We further note that all of these avenues involved affording access to respondent at a location which would not inconvenience Universale; we have every reason to believe that respondent will continue to show flexibility with respect to hoped for compliance by petitioner with the order being issued simultaneously herewith.

Respondent urges that petitioner has not made sufficient good-faith efforts to avoid the ultimate sanction of dismissal under the standard established by *Societe Internationale, Etc. v. Rogers, supra*. While we are inclined to agree with respondent's claim of inadequacy of petitioner's efforts to obtain Universale's books and records (see *United States v. Hayes*, 722 F.2d 723 (11th Cir. 1984)), we are not prepared to categorize those efforts thus far as exhibiting that degree of noncompliance which would justify the ultimate sanction. Cf. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976); *Dusha v. Commissioner*, 82 T.C. 592 (1984). On the other hand, we think it clear that petitioner may profit from our refusal to dismiss unless some measure of protection is provided respondent to enable him to refute petitioner's evidence by means of countervailing evidence and/or cross-examination. Cf. *United States v. Vetco, Inc.*, 691 F.2d 1281 (9th Cir. 1981). Consequently, we have evolved, in lieu of dismissal, a sanction directed to the nature of the evidence that petitioner will be permitted to offer at trial. We recognize that this sanction may, in the final analysis, have the same effect as an order of dismissal. But this is not necessarily the case[6] and, in any event, we think this sanction represents an appropriate balancing of the requirements of

---

[6]Our analysis has assumed that the annual statements received by petitioner from Universale and that the publications of the Swiss Insurance Department (which it is anticipated will be offered in evidence by petitioner in lieu of the books and records of Universale) would, absent our order precluding such evidence (see pp. 474-475 *supra*), be admissible in evidence for purposes of proof of the losses, expenses, and other items at issue herein. However, even if we did not otherwise preclude such evidence, its admissibility might well not be permissible on the grounds of hearsay under the Federal Rules of Evidence.

enforcement of the revenue laws of the United States and the secrecy laws of Switzerland. See *United States v. Vetco, Inc., supra* at 1288-1289; *Garpeg, Ltd. v. United States, supra* at 796. Petitioner's decision to operate as a U.S. corporation and taxpayer must carry with it the consequence of accepting the paramount interests of the laws of the United States as against the impact of the laws of another nation or a third party with which petitioner voluntarily chose to do business.[7] Moreover, we note that petitioner retained the right under article 8 of the treaty to inspect the files of Universale relating to the risks covered by the treaty. See page 470 *supra*. As the District Court put it in *Societe Internationale, Etc. v. McGranery*, 111 F. Supp. 435, 444 (D. D.C. 1953), "A claimant must take the law as he finds it; and cannot place himself in a better position than other litigants by invoking the laws and procedures of a foreign sovereign." Finally, the fact that Robert Gerling, who appears to be a key figure in the operations of Universale and an officer and director of petitioner, is a U.S. citizen, is not without its impact on the instant proceeding. Cf. *Blackmer v. United States*, 284 U.S. 421 (1932).

*An appropriate order will be entered.[8]*

---

[7]Indeed, such a consideration might dictate the conclusions we have reached as to the imposition of sanctions for petitioner's failure to produce the books and records of Universale, irrespective of any question of common control of petitioner and Universale.

[8]Respondent has not suggested the application of sec. 7456(b), I.R.C 1954, presumably because petitioner is a domestic U.S. corporation, and has eschewed the use of sec. 982 because of the inadequacy, under the circumstances of this case, of the limited sanction provided by that section.

