FLYING TIGERS OIL CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11843-88.          Filed June 13, 1989.

Elizabeth Reyes (an officer), for the petitioner.
*Robert P. Crowther,* for the respondent.

### OPINION

PARR, *Judge:* This case is currently before us on respondent's motion to prohibit the introduction of documents pursuant to section 982[1] filed May 2, 1989.

For purposes of this case we find petitioner was an Arizona corporation when it filed its petition. On April 1, 1985, petitioner filed a 1984 U.S. Short-Form Corporate Income Tax Return, Form 1120-A. On the return, petitioner reported no gross receipts or cost of goods sold and special deductions of $12,545.04. The attached balance sheet lists

---

[1]Unless indicated otherwise, all section references are to the Internal Revenue Code as amended and in effect during the period in issue.

assets and liabilities in the millions of dollars. For example, petitioner reported depreciable, depletable, and intangible assets of $200,000,000,000, cash of $4,000,001.25, and unrealized income of $5,000,000.

Respondent's Phoenix office began an examination of petitioner's 1984 Federal corporate income tax return in May 1986. Revenue Agent Cruz made a field call to the address listed on the corporate return and spoke with Helen Jessup, petitioner's statutory agent located in Phoenix, Arizona. Revenue Agent Cruz asked Ms. Jessup to have representatives of petitioner contact him.

Mr. J.S. Beltran responded to Cruz's inquiry by letter dated June 12, 1986. In the letter, Mr. Beltran represented that petitioner did not have any income or profit to report but that if Mr. Cruz had any other questions which were not answered by his response, Mr. Cruz should contact him by return airmail in Manila, Philippines.

Revenue Agent Rick Smith was reassigned to the examination of petitioner on February 5, 1987. On February 17, 1987, Mr. Smith sent a letter to petitioner, to the attention of Mr. J.S. Beltran, requesting petitioner's cooperation in the examination of its 1984 income tax return. He also informed petitioner of his authority to conduct the examination under section 7602. Mr. Smith enclosed two Information Document Requests (Forms 4564) with the February 17, 1987, letter. Mr. Smith specifically requested the following documents or records:

Request Number 1

a. Journals reflecting receipts and disbursements

b. Chart of accounts

c. General ledger

d. Receipts, invoices, or other supporting documents relating to the receipt of funds

e. Any loan agreements or contracts the company is a party to

f. Any financial statements prepared by or for the company

g. Any other contracts or agreements the company has entered into

h. Any bank statements or investment account statements for any and all accounts in the name of or for the benefit of the company

i. A list of any and all individuals and entities which have been shareholders of Flying Tigers Oil Co., Inc. at any time. If any stock has been or is currently being held by a nominee, furnish the name and address of the beneficial owner of the stock.

j. Stock transfer book or other such record regularly kept which reflects the issuance, transfer, or cancellation of ownership in the company.

k. All documents pertaining to the articles of incorporation or association of Flying Tigers Oil Company, Inc.

l. Minutes of all corporate meetings for Flying Tigers Oil Company, Inc.

m. A list of the names of all corporate officers, directors, and board of directors and their addresses. In addition, furnish the tenure of each person in their official capacity.

n. Summarize all funds (equity capital or loans) placed in the company by its officers, directors or shareholders including the specific source and nature of these funds.

o. A list of all entities, whether foreign or domestic, which are/were related to Flying Tigers Oil Company, Inc.

p. Any and all correspondence with your shareholders, whether incoming or outgoing, including telexs, memorandums or any other form of communication with the shareholders.

q. Any and all documents concerning the receivables of $5,000,147.75 and payables of $4,000,000.00 shown on the balance sheet.

Request Number 2

a. Any and all documents pertaining to the investments of $10,000,000 and unrealized income of $5,000,000 on the balance sheet.

b. A copy of the documents establishing and maintaining the option for the officers and directors to purchase shares of stock in the corporation.

c. Any and all documents showing what the $200,000,000,000 asset on the balance sheet is and where it is located. Also, any and all documents showing when and how it was acquired by the corporation and how its basis is determined. If it was acquired from the shareholders, provide any and all documents showing how and when the asset was acquired by the shareholders and how the basis of the asset for the shareholders was determined.

The Internal Revenue Service Center in Phoenix did not receive a response to the letter of February 17, 1987.

Revenue Agent Smith sent a second letter to petitioner, via registered mail, on August 19, 1987. Attached to the letter was a copy of a summons requesting 18 of the 20 requested documents of the first letter. The summons had been served on Ms. Jessup, petitioner's agent, on August 17, 1987. The summons specified the time and place of the required appearance. The letter also stated that the requested documents were required for the determination of petitioner's correct income tax liability and warned that pursuant to section 982, the requested documents would be

excluded from any later litigation if petitioner failed to provide the requested information within 90 days.

On September 11, 1987, the Internal Revenue Service Center in Phoenix received a document entitled "Notice of Writ of Preliminary Injunction" issued by the "Court of Special Cases of the Republic of Morac-Songhratti-Meads." The document purported to order the Internal Revenue Service to discontinue its examination of petitioner's 1984 U.S. Federal income tax return. Petitioner did not otherwise respond to respondent's letter of August 19, 1987.

Since petitioner did not furnish the requested material, respondent issued a notice of deficiency based upon the limited available information. Revenue Agent Smith determined, in the absence of contrary evidence, that events necessary for realization of the $5 million receivable occurred in 1984. He also disallowed petitioner's claimed deductions for lack of substantiation.

Respondent has asked the Court to prohibit the introduction at trial of all foreign-based documents and records (including digests, summaries, compilations, explanations, or other documents or testimony based on foreign-based documents), the documents accompanying the affidavit of Elizabeth Reyes, the corporate secretary, submitted in support of petitioner's motion for summary judgment and any other summaries, compilations, opinions, other documents, or testimony petitioner submitted in support of its motion for summary judgment.

On May 5, 1989, the Court ordered petitioner to respond to respondent's motion to prohibit the introduction of documents on or before June 5, 1989. The deadline has passed and petitioner has failed to respond (although petitioner has sent the Court numerous documents referring to its motion for summary judgement which has already been denied).

Section 982 provides generally:

If the taxpayer fails to substantially comply with any formal document request arising out of the examination of the tax treatment of any item * * * before the 90th day after the date of the mailing of such request on motion by the Secretary, any court having jurisdiction of a civil proceeding in which the tax treatment of the examined item is an issue shall prohibit the introduction by the taxpayer of any foreign-based documentation covered by such request.

If the taxpayer establishes that he had reasonable cause not to produce the documentation, then the exclusionary rule shall not apply. Sec. 982(b). For purposes of section 982, a "formal document request" is any request for the production of foreign-based documentation which is mailed by either registered or certified mail to the taxpayer at his last known address (if the normal request procedures have not produced the requested documentation), which specifies:

(A) the time and place for the production of the documentation,

(B) a statement of the reason the documentation previously produced (if any) is not sufficient,

(C) a description of the documentation being sought, and

(D) the consequences to the taxpayer of the failure to produce the documentation described in paragraph (C). [Sec. 982(c)(1).]

Foreign-based documentation is "any documentation which is outside the United States and which may be relevant or material to the tax treatment of the examined item." Sec. 982(d)(1). Section 982(c)(2) further provides that any person to whom a formal document request is mailed has the right to initiate a proceeding, in the appropriate U.S. District Court, to quash the request not later than 90 days after the request was mailed. In that proceeding the Secretary may seek to compel compliance with the request. The 90-day compliance period is suspended during the pendency of any proceeding to quash the request. Since petitioner never attempted to quash the request in any U.S. District Court, the 90-day compliance period was not suspended in this case.

This Court has never before specifically applied the "exclusion rule" of section 982. We have, however, noted the sanctions contained in section 982 in previous opinions. See *Glass v Commissioner*, 87 T.C. 1087, 1159 n. 123 (1986), affd. sub nom. *Herrington v. Commissioner*, 854 F.2d 755 (5th Cir. 1988), cert. denied _____ U.S. _____ , 57 U.S.L.W. 3752 (1989); *Gerling International Ins. Co. v. Commissioner*, 86 T.C. 468, 478 n. 8 (1986), later proceeding *Gerling International Ins. Co. v. Commissioner*, 87 T.C. 679 (1986) revd. on an unrelated issue 839 F.2d 131 (3d Cir.

1988); *Hongkong & Shanghai Banking Corp. v. Commissioner*, 85 T.C. 701 (1985).

Section 982 was enacted as section 337 of the Tax Equity and Fiscal Responsibility Act, Pub. L. 97-248, 96 Stat. 629. The conference report which accompanied the statute is consistent with the language of the statute and provides further guidance as to the application of section 982. For example, the conference report provides:

> The sanction of nonadmissibility does not arise if the taxpayer establishes that the failure to provide the documentation as requested by the Secretary is due to reasonable cause. In determining whether there was reasonable cause for failure to produce, a court may take into account whether the request is reasonable in scope, whether the requested documents or copies thereof are available within the United States, and the reasonableness of the requested place of production within the United States. [H. Rept. 97-760 (Conf.) 592 (1982), 1982-2 C.B. 600.]

Respondent has established that he has met the preliminary requirements for the imposition of section 982. That is, respondent has demonstrated that he sent a formal document request by registered mail to the last known address of the taxpayer and that the request specified (1) the time and place for the production of documents, (2) a description of the documents being sought, and (3) the consequences to petitioner for failure to comply with the request. It is true respondent did not state why previous documents were not sufficient; but obviously when there is a total failure to produce any of the requested documents, no explanation is required to indicate why the nonproduction is insufficient.

Respondent's apparent compliance with the provisions of section 982(c)(1) would not normally end the Court's inquiry. Section 982 also requires that requested documents be relevant or material to the examination and affords the taxpayer the opportunity to establish that reasonable cause existed for his failure to produce the requested documents.

In this case, however, no further inquiry is required. Petitioner has failed to respond to the Court's order and is deemed to concede that the request was for material and relevant documents, and that no reasonable cause existed for its failure to produce the requested documents.

The last point to address is whether the exclusion of foreign-based documentation includes the documents accompanying the affidavit of Elizabeth Reyes which petitioner submitted in support of its motion for summary judgment. We find, as respondent requests, that the affidavit of Elizabeth Reyes and accompanying documents submitted with petitioner's motion for summary judgement are based in large part on foreign-based documents petitioner has refused to produce. To not exclude documents which rely on foreign-based documents excluded from trial would circumvent the purpose of section 982. Therefore, all foreign-based documents, and the documents accompanying the affidavit of Elizabeth Reyes submitted by petitioner in support of its motion for summary judgment will be excluded from the trial of this case, set for June 19, 1989, in Anchorage, Alaska.

> *An order will be entered granting respondent's motion.*