CYRUS T. SANTA MARIA AND LUISA J. SANTA MARIA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Santa Maria v. Commissioner
Docket No. 1290-92
United States Tax Court
T.C. Memo 1994-622; 1994 Tax Ct. Memo LEXIS 629; 68 T.C.M. (CCH) 1468; December 19, 1994, Filed *629 Decision will be entered under Rule 155. R issued a foreign document request under sec. 982, I.R.C., to a corporation that is solely owned by Ps. No similar request under sec. 982, I.R.C., was addressed to Ps. Ps supplied the documents in question within the time allotted by the Court's discovery rules, but not within 90 days of receiving the sec. 982, I.R.C., request. 1. Held: Admission of the documents presented by Ps is not prohibited by sec. 982 I.R.C.
2. Held, further, Ps did not understate their taxable income by $ 136,245. 3. Held, further, Ps received unreported interest income of $ 17. 4. Held, further, Ps are not subject to additions to tax for negligence or for substantial understatement of income. For petitioners: Peter S. Buchanan. For respondent: Charlotte A. Mitchell. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioners' Federal income tax for 1987 of $ 57,038, and additions to tax of: $ 2,852 under section 6653(a)(1)(A); [1] 50 percent of the interest due on $ 57,038 under section 6653(a)(1)(B); and $ 14,260 under section 6661. *630 The issues for decision are: (1) Whether section 982 bars the admission of documents submitted by petitioners. We hold that it does not. (2) Whether petitioners received unreported income of $ 136,245. [2] We hold that they did not. (3) Additionally, whether petitioners received unreported interest income of $ 687. We hold that they did receive such income only to the extent of $ 17. (4) Whether petitioners are liable for additions to tax under section 6653(a)(1)(A) and (B). We hold that they are not subject to such additions. (5) Whether petitioners are liable for additions to tax under section 6661. We hold that they are not. At trial, petitioners conceded that they are not entitled to a dependency exemption and child care credit for their nephew. FINDINGS OF FACT The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioners resided in *631 San Francisco, California. Petitioners are married and filed a joint income tax return for the year in issue. Petitioners are the sole shareholders of Grace Foreign Exchange Corp. (hereinafter Grace FEC). [3] Grace FEC's primary business is to receive U.S. dollars from U.S. customers and to transmit funds in the form of Philippine pesos to Philippine resident beneficiaries for a fee. Typically the corporation employed an agent in the Philippines to make door-to-door delivery of the funds to Philippine resident beneficiaries. Oscar Jesena, the agent, is petitioner wife's brother. Mara Travel is a travel agency located in the Philippines with which Oscar Jesena is affiliated; Elsa Jarantilla, sister of petitioner wife, is another owner and officer of Mara Travel. Respondent began auditing petitioners' tax *632 return after commencing the audit of petitioners' wholly owned corporation. While auditing the corporation, respondent issued a formal document request in compliance with section 982 on August 30, 1990 (hereinafter referred to as the foreign document request). The foreign document request was addressed to the corporation -- Grace Foreign Exchange Corp. -- and the address also contained the phrase "Attn: Cyrus T. Santa Maria - President". No foreign document request under section 982 was issued specifically to petitioners. Petitioners' wholly owned corporation remitted the following amounts to petitioners on the following dates: Date
Payee
Method of transfer
Amount 2/03/87
Luisa Santa Maria
Cashier's check
$  25,000
3/24/87
Joint account
Wire transfer
43,000
5/15/87
Joint account
Wire transfer
10,000
6/09/87
Cyrus Santa Maria
Cashier's check
25,000
10/22/87
Joint account
Wire transfer
15,000
10/23/87 [1]
Luisa Santa Maria
Cashier's check
18,245
Total
$ 136,245
*633 Mrs. Leonor Javellana, who lived in the Philippines, was the grandmother of petitioner wife. During 1987, Mrs. Javellana, through her property manager, Ms. Emma Victoria, made arrangements to use Mrs. Javellana's funds to pay Grace FEC's Philippine obligations in the above amounts on dates just prior to the above dates. [4] Mrs. Javellana paid the company's Philippine debts to facilitate the transfer of cash gifts to her granddaughter. Letters from Ms. Victoria to petitioner wife were presented at trial. The letter dated March 21, 1987, states: "Your Lola [grandmother] is very sickly now and she might go there for medical check up and maybe this amount is intended for her expense there." Unfortunately, Mrs. Javellana died in 1988, before she was able to make such a trip to the United States. Five accounts from which Forms 1099 were issued with petitioner husband's Social Security number were not *634 included on Schedule B of petitioners' 1987 Federal Form 1040. One of the accounts reported $ 17 in interest income which petitioners concede they failed to report. The other four accounts were also held in petitioner husband's parents' names, and the Forms 1099 for each of those accounts were addressed to petitioner husband's parents' home. Though petitioner husband's name was included on the account, the accounts were actually used by his parents. OPINION Foreign Document Request
Respondent asserts that the foreign document request made to petitioners' wholly owned corporation, under section 982, applies to petitioners, and any foreign documents that petitioners seek to use as proof regarding the unreported income were untimely if they were submitted beyond the 90-day requirement of section 982, and should be barred as evidence. Petitioners contend that the foreign document request was addressed only to the corporation and does not apply to documents that support their individual income tax return. Respondent particularly points out the portion of the foreign document request that asks for: "All other documents which evidence the source of funds transmitted worldwide *635 by Grace Foreign Exchange for Mara Travel, Oscar J. Jesena or Elsa Jarantilla." Although not submitted pursuant to the foreign document request, with one exception the challenged documents were received timely under our discovery rules. [5]
Respondent audited petitioners and their wholly owned corporation. There is no assertion by respondent that the corporation is not a separate entity. Respondent states that since the documents petitioners are using to support their individual case are documents related to the corporation, those documents are controlled by the 90-day limitation of section 982, and since those documents were not submitted *636 within 90 days of the issuance of the foreign document request those documents cannot be used at trial. We disagree. Section 982 provides, in pertinent part: SEC. 982(a). General Rule. -- If the taxpayer fails to substantially comply with any formal document request arising out of the examination of the tax treatment of any item * * * before the 90th day after the date of the mailing of such request on motion by the Secretary, any court having jurisdiction of a civil proceeding in which the tax treatment of the examined item is an issue shall prohibit the introduction by the taxpayer of any foreign-based documentation covered by such request. [Emphasis added.]
If the taxpayer establishes that she/he had reasonable cause not to produce the documentation, then the exclusionary rule shall not apply. Sec. 982(b); Flying Tigers Oil Co. v. Commissioner, 92 T.C. 1261, 1264 (1989). The foreign document request was addressed to Grace Foreign Exchange Corp., not to petitioners. The statute contemplates that the foreign document request will be mailed "to the taxpayer" at "his" last known address. Sec. 982(c)(1). Respondent has raised *637 no issue in the corporation's case in regard to the foreign document request; thus it appears that the corporation appropriately complied with the foreign document request as it applied to the entity addressed in the foreign document request. Respondent was well aware of petitioners' Philippine connections, and the fact that petitioners had received Philippine-sourced funds. Additionally, the documents in question were timely produced during the discovery process of this case. Therefore, respondent was able to review the documents prior to trial and was not prejudiced as she would have been had the documents never been produced. Cf. id. If respondent was concerned that petitioners would not produce foreign documents for the audit and trial, it would have been appropriate for respondent to issue a foreign document request to petitioners, not only to their wholly owned corporation. The documents produced at trial by petitioners were documents that were not needed as evidence for the corporation's case. Since the foreign document request was addressed to the corporation and not to petitioners, we hold that section 982 does not bar petitioners from introducing into evidence the *638 documents presented for this case, [6] and such documents are thus admissible. Unreported Income
Respondent determined that petitioners have received taxable income from their closely held corporation that they did not report on their Federal income tax return. Petitioners assert that the additional money they received from their corporation is actually a circuitously made gift from Mrs. Santa Maria's grandmother. In the absence of adequate records, the Commissioner may use a method of reconstruction that clearly reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954). The reconstruction of income *639 need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530 (1970). Where there is an absence of adequate records this Court has approved the use of the bank deposits method to reconstruct a taxpayer's income. Parks v. Commissioner, 94 T.C. 654, 658 (1990). The Commissioner must either connect the bank deposits to a likely source of taxable income or negate the nontaxable sources alleged by the taxpayer. Kramer v. Commissioner, 389 F.2d 236, 239 (7th Cir. 1968), affg. T.C. Memo. 1966-234. When the bank deposits method is employed, the Commissioner must take into account any nontaxable source or deductible expense of which she has knowledge. DiLeo v. Commissioner, 96 T.C. 858, 871 (1991), affd. 959 F.2d 16 (2d Cir. 1992). If the taxpayer believes the Commissioner's method of computation is unfair or inaccurate, the burden is on the taxpayer to show such unfairness or inaccuracy. Id.
Gross income includes all income from whatever source, except *640 as otherwise provided in the Code. Sec. 61. Gross income does not include gifts. Sec. 102(a). A gift is defined as given from a "'detached and disinterested generosity,' * * * 'out of affection, respect, admiration, charity or like impulses' * * * the most critical consideration * * * is the transferor's 'intention'." Commissioner v. Duberstein, 363 U.S. 278, 285 (1960). "Decision of the issue presented * * * must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case". Id. at 289. Like gifts, loans are also nontaxable. An essential inquiry as to whether there is a bona fide loan is whether the recipient of the funds has a good faith intent to make repayment and whether the payor of the funds has a good faith intent to enforce repayment. Fisher v. Commissioner, 54 T.C. 905, 909 (1970). Here, during the audit, respondent discovered a number of transfers from Grace FEC to petitioners, for which respondent could find no business reason. Petitioners contend that the transfers were *641 gifts from Mrs. Santa Maria's grandmother, using the corporation to convey the gift. Respondent requested petitioners to verify two of the transfers as gifts, a request that petitioners complied with by asking Oscar Jesena, the corporation's Philippine agent, to provide an affidavit as to the source of the two transfers. [7] Mr. Jesena indicated the two transfers were gifts from the grandmother, Mrs. Leonor Javellana, to petitioners. Mr. Jesena did not mention any of the other transfers that were made. From this, respondent infers that the other transfers were not gifts. Respondent is overreaching her own request. She asked for particular information, received what she requested, and is now asking us to infer that what she did not ask was also incorporated in the response that Mr. Jesena provided. We will not make any negative *642 inferences from the information that Mr. Jesena provided. At trial a number of people testified for petitioners including the grandmother's property manager, Emma Victoria. The grandmother lived in the Philippines and transacted her business in the currency of the Philippines. She wanted to give her granddaughter money. If the grandmother had given her granddaughter a check, the check would have been in the currency of the Philippines and the granddaughter would have had to pay a fee to a U.S. bank to accept the Philippine check and to exchange the currency for U.S. dollars. Instead, the principals came up with a plan to save the transaction costs for both the granddaughter and the corporation. The grandmother, through her agent, Ms. Victoria, transferred Philippine currency to Philippine residents with the instruction and guidance of Oscar Jesena, Grace FEC's agent. U.S. residents had given dollars to Grace FEC to be transferred to those Philippine residents in local currency. Instead of the corporation's paying those Philippine individuals through a Philippine bank, thereby incurring transaction costs, the grandmother paid the individuals on Grace FEC's behalf. This created *643 a loan from the grandmother to Grace FEC which the corporation then had an obligation to repay. Petitioners claim that the money they received from Grace FEC was repayment of the debt that Grace FEC owed petitioner wife's grandmother. We must first determine whether there was a bona fide loan between the grandmother and the corporation. Evidence was presented that the grandmother's funds were used to fulfill corporate obligations. Evidence was also presented that showed that the amounts so used were transferred by Grace FEC almost immediately -- but to petitioners, not to the grandmother. Therefore, we hold that there was a bona fide debt, and that the debt was paid to petitioners at the grandmother's request. Ms. Victoria presented bank statements and letters to show that she had made the appropriate transfers from the grandmother's funds. The letters contained both English and a Philippine dialect. Respondent questioned the letters because the same English word had been crossed out in ink and corrected on each of the letters. Ms. Victoria testified that she had made the change because she did not always use correct English. Upon observing her testimony, it is obvious that *644 English is a second language to her, and her use of English is not always correct. Additionally, it makes sense that if a person has a problem with a particular word, she will consistently have a problem with that word. We find Ms. Victoria's testimony to be consistent and believable. On brief, respondent then argued that the reason the grandmother had transferred some of the funds was so that the grandmother would have the funds in the United States.[8] Respondent contends that since the funds were to be used by the grandmother, petitioners held the funds in trust. Since the grandmother did not avail herself of the funds due to her death, the funds were income to petitioners. Respondent first raised this argument on brief; therefore, we need not consider it. See Seligman v. Commissioner, 84 T.C. 191, 198-199 (1985), affd. 796 F.2d 116 (5th Cir. 1986); Heller v. Commissioner, T.C. Memo. 1987-376. Moreover, the record does not reflect the elements nor amount of a "trust", nor how the "trust" money became taxable income to petitioners. *645 Assuming arguendo that an informal trust was formed in 1987, the grandmother did not die until 1988. Thus, the trust assets were not distributed until 1988, and the grandmother's will would control the disbursement of the trust corpus. The grandmother's will is not part of the record. Moreover, petitioners' 1988 tax year is not before the Court. Next, petitioners claim that the grandmother intended a gift to them. Petitioner wife credibly testified that the grandmother intended to make a gift to her -- the granddaughter -- and her husband. The relationship between a grandchild and grandparent is one that in the "mainsprings of human conduct" one would expect to foster an exchange of gifts. The grandmother died in 1988, and had been very ill in 1987. It is reasonable to believe that the grandmother wanted to be alive to see her granddaughter's enjoyment of her gifts. For these reasons we find that the money that the grandmother transferred to her granddaughter was a gift, and thus not taxable to petitioners. Since the amount of money the corporation repaid to petitioners equaled the amount of money the grandmother loaned the corporation, there is no taxable income to petitioners. *646 From the above, petitioners have provided sufficient proof to connect the money that was transferred from the corporation to petitioners to a nontaxable source of income, and respondent has not negated the nontaxable source. Therefore we hold that the $ 136,245 that was transferred from the corporation to petitioners is a nontaxable gift. Unreported Interest Income
Respondent contends that petitioners did not report $ 687 of interest income on their 1987 Federal income tax return. Respondent presented a computer printout listing that matched petitioners' Social Security numbers with Forms 1099 that had been received by the Internal Revenue Service. At trial, petitioners conceded that $ 17 was additional income that they had inadvertently omitted from their original tax return. However, petitioner husband stated that the additional $ 670 was actually income to his parents. The Forms 1099 that petitioner husband testified as belonging to his parents had his parents' address on them. Additionally, petitioners reported over $ 42,000 in interest income on their Federal return as filed. Petitioner husband admitted that the Forms 1099 for $ 17 had been inadvertently overlooked *647 by petitioners when their return was prepared. Petitioner husband presented cogent, believable testimony that the Forms 1099 with his parents' address on them were actually accounts that were used and controlled by his parents and thus were not taxable to petitioners. For the above reasons we hold that petitioners are taxable on an additional $ 17 in interest income for 1987. Additions to Tax -- Negligence
In her notice of deficiency, respondent determined that petitioners are liable for additions to tax under section 6653(a)(1)(A) and (B) for 1987. For 1987, section 6653(a)(1)(A) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. Negligence under section 6653(a) is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) *648 (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). Petitioners bear the burden of proof regarding the additions to tax under section 6653(a). Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). Due to our holdings herein the only issues to decide as to whether there is negligence are the $ 17 of additional interest income and the disallowance of a dependency deduction and child care credit for petitioners' nephew. Petitioner husband admitted at trial that they had inadvertently omitted the $ 17 in interest income. Petitioners argued that they had supplied their Certified Public Accountant (hereinafter C.P.A.) with all of the information necessary to decide whether their nephew was a dependent; thus they had relied on professional advice in regard to this matter. Petitioners missed reporting only $ 17 of over $ 42,000 in interest income. At trial petitioner husband explained that the interest was due to their mortgage holder's selling the mortgage on petitioners' home. And petitioners relied on the advice of *649 their CPA in deciding whether their nephew was a dependent. On this record, we hold that petitioners are not liable for the additions to tax for negligence under section 6653(a)(1)(A) and (B) for 1987. Additions to Tax -- Substantial Understatement
Respondent determined that petitioners are liable for additions to tax under section 6661 for substantial understatement of income tax liability for 1987. Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. An understatement is substantial if it exceeds the greater of: (1) 10 percent of the tax required to be shown on the return for a taxable year or (2) $ 5,000. Sec. 6661(b)(1)(A). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). Due to our holdings herein, the understatement of tax in this case is, by definition, not substantial. Therefore, we hold that petitioners are not liable for the addition to tax under *650 section 6661. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. This amount does not include an additional $ 10,000 respondent conceded at trial.↩
3. Grace FEC is the subject of a related Tax Court case. For a description of the corporation's operations, see Grace Foreign Exchange Corp. v. Commissioner, T.C. Memo. 1994-621↩.
1. The affidavit from Oscar Jesena in response to the IRS' request for information indicated the date of this transfer as 10/23/86; however all other references to this transfer, including stipulations and requested findings of facts by both parties, indicate that the date of the transfer was 10/23/87. Therefore, we will treat the date received as 10/23/87.↩
4. The transactions were made almost concurrently, so it is reasonable that no interest was paid on the transactions.↩
5. One document, which consisted of three pages, was only partially submitted when only one of the three pages was given to respondent timely. According to reliable testimony, this was a clerical oversight. In reviewing the document, in light of the other documents that were submitted, respondent was not prejudiced in presenting her case; therefore, it was not a material omission.↩
6. Among the documents that respondent requested be excluded under sec. 982 were copies of Emma Victoria's bank statements. Emma Victoria is totally unrelated to petitioners and the corporation. It would be unreasonable to hold petitioners' responsible for the production of such bank statements under sec. 982↩, when they had no legal control of those documents.
7. Even with the affidavit, which was received into evidence by joint stipulation, respondent did not concede that these two transfers were gifts. Oscar Jesena did not testify in this trial.↩
8. Respondent did not raise this argument until briefs were filed. Therefore, respondent has the burden of proof on this issue.↩